**CHARLOTTE MOTOR SPEEDWAY, INC., Plaintiff,**

v.

**INTERNATIONAL INSURANCE COMPANY, Defendant and Third–Party Plaintiff,**

v.

**SONIC FINANCIAL CORPORATION, Charlotte Motor Speedway, Inc., O. Bruton Smith and Charles A. West, Third–Party Defendants.**

Civ. A. No. C–87–259–S.

United States District Court, M.D. North Carolina, Salisbury Division.

April 3, 1989.

---

William E. Poe and Fred T. Lowrance of Parker, Poe, Thompson, Bernstein, Gage and Preston, Charlotte, N.C., for plaintiff.

James E. Walker and Kiran H. Mehta, of Kennedy, Covington, Lobdell & Hickman, Charlotte, N.C., for defendant.

## MEMORANDUM OPINION

GORDON, Senior District Judge:

This matter is before the Court on the objections of Plaintiff Charlotte Motor Speedway, Inc. ("New CMS") to certain rulings contained in an Order entered on 10 January 1989 by Magistrate Paul T. Sharp. Defendant International Insurance Company ("International") has responded outlining the reasons why this Court should affirm the Magistrate's Order. For the reasons below, the Court affirms the contested rulings of Magistrate Sharp and orders compliance with the same.

### Background

In December 1983, Charlotte Motor Speedway ("Old CMS") entered into a directors' and officers' liability insurance policy ("Policy") with International. The Policy provided for the indemnification of the insured directors and officers for certain losses they might sustain on account of claims for wrongful acts asserted against them in their corporate capacities. The Policy also provided for the reimbursement of Old CMS to the extent that it was legally required to indemnify the directors and officers for losses resulting from such claims.

In September 1985, a merger of Old CMS into a wholly-owned subsidiary of Lone Star Ford, Inc. ("LSF") was effected with the resulting entity assuming the name "Charlotte Motor Speedway, Inc." ("New CMS"). Prior to the merger, LSF was owned and controlled by O. Bruton Smith ("Smith"), the majority shareholder of Old CMS. New CMS was to be owned by a handful of persons who had been majority shareholders in Old CMS with the ownership interest of the minority shareholders to have been extinguished for the price of $300.00 per share. The minority shareholders objected and commenced two types of actions in response to the merger: (1) a federal securities action against Smith, Old CMS, LSF, and several directors of Old CMS ("underlying action"); and (2) state court appraisal actions against Smith only ("appraisal actions"). In these actions the minority shareholders were complaining of an inadequate price for their shares and a fraudulent squeeze-out merger.

In December 1986, New CMS paid $1.9 million to settle the underlying and appraisal actions against New CMS and eight other defendants. Under the settlement, each Old CMS shareholder received $756.87 per share, as opposed to the $300.00 per share proposed in the merger plan. New CMS now brings this action (as assignee of its directors) under the Policy to recover all amounts paid in settlement and defense of the underlying action and the appraisal actions.

In its defense, International contends that the original plan for settlement was to involve a straightforward appraisal of the fair market value of Old CMS stock with an agreement by New CMS to pay each minority shareholder plaintiff the amount corresponding to the appraised value of his or her shares. However, International indicates that the final settlement agreement was structured to create an appearance of joint and several liability among the defendants in the underlying action for the wrongful acts alleged by the minority shareholders.

International asserts that the reason this appearance of liability was inserted into the settlement agreement was to enable New CMS to characterize its settlement payment as indemnification of its former directors so as to invoke coverage under the Policy. International alleges that these factors represent an effort by New CMS/LSF and Smith to finance a pure corporate transaction, the acquisition of the minority shareholder interests in Old CMS for fair market value, through the proceeds of the Policy. If allowed to succeed, it is contended that the wrongful insurance claim by New CMS will result in the unjust enrichment of the new owners of New CMS inasmuch as they will have extinguished the minority interests in Old CMS at International's expense.

In the motion before the Court, New CMS objects to two portions of the Magistrate's Order of 10 January 1989. First, it contends that the Order's allowance of discovery of opinion work product relevant to the settlement agreement of the underlying action is in contravention of the law of this Circuit. Second, New CMS contends that the Order erroneously granted International leave to file a third-party complaint despite a lengthy delay for which no viable

excuse was offered. The Court declines to adopt either contention by New CMS for the reasons below.

*Discussion*

### I. *Production of Opinion Work–Product*

■ While opinion work product is generally immune from production under the provisions of Fed.R.Civ.P. 26(b)(3) [1], many courts have recognized narrow exceptions to this protection under certain circumstances. The issue before the Court is whether the circumstances presented by the instant case warrant such an exception and whether the possibility of an exception exists within the framework of Fourth Circuit precedent. New CMS contends that Magistrate's Order "carves out" a new exception in contravention of applicable precedent. The Court disagrees.

New CMS relies primarily on *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730 (4th Cir.1974), *cert. denied,* 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975). In *Duplan,* the Fourth Circuit Court of Appeals read Rule 26(b)(3) as providing absolute protection of opinion work product and stated that "no showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions or legal theories. This is made clear by the Rule's use of 'shall' as opposed to 'may'." *Id.* at 734. However, recent decisions which recognize that the protection of opinion work product by Rule 26(b)(3) is not in all cases absolute erode the precedential value of *Duplan.*

The United States Supreme Court has ruled that under Rule 26 and *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), "[opinion] work product cannot be disclosed simply on a showing of sub-

---

**1.** Fed.R.Civ.P. 26(b)(3) provides:

Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has

substantial need of the materials in preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney of other representative of a party concerning the litigation.

stantial need and inability to obtain the equivalent without undue hardship." *Upjohn Co. v. United States*, 449 U.S. 383, 401, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981). In *Upjohn,* the Court found that the United States Government's showing of necessity and unavailability was insufficient to overcome work-product protection of documents it sought from Upjohn Company during an investigation by the Internal Revenue Service (IRS). *Id.* at 402, 101 S.Ct. at 689. However, the Court stated that it was "not prepared ... to say that such material is always protected by the work-product rule." *Id.* at 401, 101 S.Ct. at 688. While it is clear that the Supreme Court is reluctant to recognize exceptions to Rule 26(b)(3), *Upjohn* indicates its willingness to do so and the instant case presents a logical basis for such an exception.

In the Fourth Circuit's most recent decision regarding Rule 26(b)(3), it ruled that intentional disclosures to the government to settle a criminal investigation constited waiver of non-opinion work product privilege but not opinion work product privilege. *In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir.1988). However, the Fourth Circuit also recognized the possibility of a permissible exception to Rule 26(b)(3) protection of opinion work product in the following passage:

We think when there is subject matter waiver, it should not extend to opinion work product for two reasons.

First and most generally, opinion work product is to be accorded great protection by the courts. While certainly actual disclosure of pure mental impressions may be deemed waiver, and while conceivably there may be indirect waiver in extreme circumstances, we think *generally* such opinion work product is not subject to discovery. While *as we recognized in Duplan, the Supreme Court's reasoning in Nobles necessarily implies that the privilege derived from the work product doctrine is not in all cases absolute, see Duplan [Corp. v. Deering Milliken, Inc.],* 540 F.2d [1215] at 1223 [ (4th Cir.1976) ], the plain language of Fed.R.Civ.P. 26(b)(3) suggests

especial protection for opinion work product.

*Martin Marietta,* 856 F.2d at 626 (emphasis supplied). The Magistrate's application of a recognized exception to the protection of opinion work product by Rule 26(b)(3) is not inconsistent with *Martin Marietta* which is distinguishable on its facts.

The key distinction is that in contrast to the instant case, the activities and advice of counsel was not an issue in *Martin Marietta* or *Duplan.* In the instant case, the activities and advice of Plaintiff's counsel in the settlement of the underlying action are inextricably interwoven with the issue of International's liability under the Policy. Specifically, the discovery of the nature of these activities of counsel goes to whether New CMS met its obligations under the Policy in constructing the settlement agreement and whether it reached the agreement in good faith. This fact is significant for it serves as the basis for an exception to Rule 26(b)(3) protection of opinion work product which is applicable here.

Many courts faced with the issue of the production of opinion work product have recognized an exception to Rule 26(b)(3) protection for work product which concerns activities of counsel that are directly in issue. *See, e.g., Truck Insurance Exchange v. St. Paul Fire & Marine Insurance Co.,* 66 F.R.D. 129 (E.D.Pa.1975). As Magistrate Sharp has noted, the instant case presents circumstances similar to those before the *Truck Insurance* court and its reasoning in that decision is persuasive.

In that case, Truck Insurance Exchange ("Truck Insurance") was the insurer of American Security Van Lines ("American"), a company which leased trucks from Morgan Van and Storage ("Morgan"). Morgan was insured by St. Paul Fire & Marine Insurance ("St. Paul"). The truck lease agreement between American and Morgan contained an insurance contract which provided that Morgan would indemnify American for any loss it incurred due to the negligence of a Morgan driver. Later, a driver of a truck leased by American injured a pedestrian who then brought an

action for negligence against American. Truck Insurance, on behalf of American (its insured), settled the negligence action for an undisclosed sum and paid the fees of the defense counsel therein, Charles Bogdanoff ("Bogdanoff").

Truck Insurance then sued St. Paul for indemnification and/or contribution contending that based on St. Paul's insurance contract with American, it was in fact responsible for defending the negligence action against American. In preparing its defense, St. Paul sought the settlement materials produced by Boganoff to determine whether American had met its obligations under the insurance contract and whether the settlement terms and costs were reasonable. Truck Insurance resisted, contending that the materials sought from Bogdanoff were protected by the common law attorney-client privilege as well as Rule 26(b)(3). The Court found that an exception to Rule 26(b)(3) applied under the facts before it.

An examination of Truck Insurance's claim of work product privilege under Rule 26(b)(3) revealed that the privilege did not apply because the "activities of counsel in the underlying lawsuit [were] the basis of St. Paul's defense in [the] case." *Truck Insurance* at 136. *See also, Kirkland v. Morton Salt Co.*, 46 F.R.D. 28 (N.D.Ga. 1968) (in action for malicious use of process, the court stated that as to the work-product privilege claimed for information from the underlying action, its immunity retreated as necessity and good cause was shown for its production in the balance of competing interests).

As further support for its ruling, the *Truck Insurance* court made reference to Professor James W. Moore's discussion of this narrow exception to the protection of opinion work product. *Truck Insurance* at 136 (citing 4 J. Moore, Moore's Federal Practice ¶ 26.64 [4] at 26–447 (2d Ed. 12th printing 1974). In the most recent version of Professor Moore's treatise, the passage reads:

> Cases indicate that when the activities of counsel are inquired into because they are at issue in the action before the court, there is cause for production of documents that deal with such activities, though they are 'work product'. While Rule 26(b)(3) provides that protection against discovery of the attorney's or representative's 'mental impressions, conclusions, opinions, or legal theories' *shall* be provided, such protection would not screen information directly at issue.

4 J. Moore, Moore's Federal Practice ¶ 26.64 [3.–2] at 26–385 (2d Ed. 20th printing 1986) (emphasis in original).

In addition to the Magistrate's decision, this exception has been followed by at least two other courts in addressing this issue since the *Truck Insurance* decision. *See Donovan v. Fitzsimmons*, 90 F.R.D. 583 (N.D.Ill.1981) (court held that to the extent that advice of counsel was critical area of inquiry, interests in attorney work product privilege had to yield); *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926 (N.D. Cal.1976) (while an attorney's private thoughts are deserving of special protection, the concern for attorney privacy must give way when the advice of counsel is directly in issue).

Similarly, the activities of the counsel employed by New CMS in the underlying action are directly in issue here for they are the only means of discovering whether New CMS met its obligations under the insurance contract and reached its settlement agreement in good faith. The settlement materials are therefore critical to International's defense. As the courts which have addressed this issue indicate, these circumstances warrant the application of a narrow exception to Rule 26(b)(3) for the information for which protection is sought is directly in issue. Accordingly, the Magistrate's Order requiring New CMS to submit the settlement materials from the underlying action for *in camera* review in accordance with his instructions is affirmed.

II. *International's Third–Party Complaint*

New CMS also contends that the Magistrate erred in granting International's motion to file a third-party complaint

due to the unexplained nineteen month delay and the prejudice that will be caused to New CMS. The court recognizes that the delay in filing this motion was substantial but upon consideration of all relevant factors and the provisions of Fed.R.Civ.P. 14(a)[2] finds that the Magistrate made a proper ruling.

First, International has offered a plausible explanation for the delay in its contention that newly emerging evidence obtained through discovery forms the basis for the third-party complaint. Second, the scope of discovery will not be significantly increased because the additional parties had been or likely would have been deposed anyway. Finally, the interests of judicial economy require that the third-party complaint be allowed in order to avoid a duplicative second action. Granting International's motion to file a third-party complaint is necessary for proper adjudication of the rights of all parties involved and will not substantially delay these proceedings.

*Conclusion*

For the reasons stated herein, Plaintiff's motion to set aside the Magistrate's Order of 10 January 1989 is denied. The Court orders full compliance with the Magistrate's Order of 10 January 1989 with the 10 day period prescribed therein to commence as of the date of this opinion and order. Accordingly, an order will be entered.

ORDER

In accordance with a memorandum opinion entered contemporaneously herewith,

IT IS ORDERED that Plaintiff Charlotte Motor Speedway's motion to set aside the Magistrate's Order of 10 January 1989 be, and the same hereby is DENIED.

IT IS FURTHER ORDERED that the ten (10) day period prescribed therein for the submission for *in camera* review materials withheld from discovery upon claims

of opinion work product commence as of the date of this order.

---

**2.** Fed.R.Civ.P. 14(a) provides:
   *When Defendant May Bring in Third Party.* At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.