**CARDTOONS, L.C., an Oklahoma Limited Liability Company, Plaintiff,**

v.

**MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION, Defendant.**

No. 93–CV–576–E(J).

United States District Court, N.D. Oklahoma.

March 15, 2001.

James William Tilly, Craig Alan Fitzgerald, Marianna Ellen McKnight, Tilly & Fitzgerald, Tulsa, OK, for plaintiff.

James E. Weger, Robert R. Peters, II, Jones, Givens, Gotcher & Bogan, Tulsa, OK, Dennis D. Palmer, Michael P. Allen, Russell S. Jones, Jr., Shughart, Thomson & Kilroy, Kansas City, MO, for defendant.

### ORDER

JOYNER, United States Magistrate Judge.

Plaintiff filed a Motion to Compel and Brief in Support on January 29, 2001. [Doc. No. 188–1]. Oral argument on the Motion was heard February 26, 2001. Plaintiff was present by and through attorneys James Til-

1. If year 2000 balance sheets are not currently available, Defendant should produce balance sheets for the year 1999, and produce year 2000 balance sheets when available.

2. The letter to Champs was from Dennis D. Palmer, with STK. It stated:
   We understand that you have and are in the process of printing color drawings of active

ly, Craig A. Fitzgerald, and Marianna E. McKnight. Defendant was present by and through attorneys Russell S. Jones and James E. Weger. Defendant was given until Friday, March 2, 2001, to submit a privilege log with regard to the documents which Plaintiff seeks in this motion. The Court has reviewed the briefs submitted by the parties, the case law cited by the parties, the privilege log submitted by Defendant, and the arguments presented by counsel. Plaintiff's Motion to Compel is **DENIED** in part and **GRANTED** in part.

Plaintiff's Motion to Compel the documents which Defendant claims are protected by privilege is denied. However, Defendant is directed to review the documents that Defendant claims are privileged to determine whether any documents should be produced to Plaintiff after Defendant has considered the Court's Order. Defendant shall send a written response to Plaintiff within 14 days of the date of this Order.

Plaintiff's Motion to Compel documents related to Requests for Production numbers 14 and 16 (cease and desist letters) and 15 and 17 (pleadings following such letters) is granted. Plaintiff shall produce such documents within 14 days of the date of this Order.

Plaintiff's Motion to Compel the financial documents from Defendant, which relate to Plaintiff's claim for punitive damages, is granted in part. Defendant shall produce year 2000 balance sheets [1] within 14 days of the date of this Order.

### I. FACTUAL BACKGROUND

Cardtoons, L.C., planned to produce and distribute "Cardtoons Baseball Parody Cards." Champs Marketing, Inc., located in Ohio, planned to print the cards. Major League Baseball Players Association ("MLBPA") sent letters to both Champs [2]

Major League baseball players in baseball trading cards for individuals associated with Cardtoons. This is to notify you that we believe that the activities of those individuals violate the valuable property rights of publicity of the MLBPA and the players themselves. Further, we believe that by printing the baseball trading

and Cardtoons.[3] The letters claimed that the parody cards violated MLBPA rights and threatened additional action unless the printing ceased.

Before the letters were sent, MLBPA engaged the law firm of Shughart, Thomson & Kilroy (STK). STK conducted legal research and billed approximately 38 hours for research and writing connected to one memorandum which addresses the legal issues of parody under the First Amendment and the right of publicity. A partner at STK spent four and one-half hours reviewing the case law, the documents, and preparing the cease and desist letters.[4]

The decision to send the cease and desist letters was made by Judith S. Heeter, the Director of Licensing with MLBPA, and also an attorney with STK. She made the decision, according to counsel for MLBPA, based on several factors, including her experience and the research conducted by STK. Defendant asserts that the documents which were prepared by attorneys are protected by either the work product or attorney client privilege.

> cards at the request of Cardtoons, you are participating in Cardtoons' illegal activities. Accordingly, we request that you *immediately* cease and desist the printing of baseball trading cards of active Major League baseball players at the request of Cardtoons or others who are not authorized to use the likeness of active Major League baseball players.
> If I do not hear from you immediately confirming that you will agree to this request, I will have no alternative but to take all necessary action *to enforce the rights of the players* and the MLBPA against infringement of their rights.
> [Doc. No. 1–1, Exhibit B, emphasis in original].

3. The letter to Cardtoons was from Dennis D. Palmer, with STK. It stated:
   > It has come to our attention that you and *others using the name "Cardtoons"* are producing, advertising, distributing and selling color drawings of Major League baseball players in baseball trading card sets. Your use of the likenesses of active major League baseball players in this manner is for your commercial benefit. Your activities violate the valuable property rights of MLBPA and the players.

## II. ATTORNEY CLIENT AND WORK PRODUCT

### A. APPLICABLE STATE LAW

Plaintiff asserts that Missouri law governs the applicable privileges because STK is a Missouri company and all communications at issue occurred in STK's offices in Missouri. Defendant asserts that Oklahoma law governs the applicable privileges. Under Fed. R.Evid. 501 the applicability of privileges is governed by state law.

> [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law.

Fed.R.Civ.P. 501.

Plaintiff's brief asserts several Oklahoma state causes of actions. MLBPA is headquartered in New York. Plaintiff is based in Oklahoma. Champs, who received one of the cease and desist letters is located in Ohio. STK and Ms. Heeter[5] are in Missouri. The work to create the documents and the communications was presumably performed in Missouri, and possibly New York.

> On behalf of MLBPA, we request that you and all other individuals associated with "Cardtoons" *immediately* cease and desist the production, promotion, distribution and/or sale of baseball trading cards depicting active Major League baseball players. Your conduct is not authorized by the MLBPA or its members and is a flagrant misuse of their rights to publicity. Please advise me immediately as to whether you will stop the production and refrain from selling baseball trading cards. If you will not agree to cease these activities, Major League Baseball Players Association will have no alternative but to pursue its full legal remedies to enforce its rights.
> [Doc. No. 1–1, Exhibit A, emphasis in original].

4. Defendant has submitted a privilege log listing eight documents which Defendant asserts are privileged. Three of the listed documents involve research conducted by attorneys with STK.

5. Plaintiff notes that Ms. Heeter lives in Kansas and works in Missouri.

Plaintiff's brief outlines the steps for determining which state privilege law applies. Oklahoma conflicts law determines which state law applies. Plaintiff notes that Oklahoma follows the laws of the state with the most significant relationship to the communication. In this action, Plaintiff identifies Missouri as having the most significant relationship because the communications occurred in Missouri and were made by and to Missouri attorneys.

■ The Court concludes that to resolve this Motion to Compel the issue of the applicable state law need not be determined. Plaintiff proposes application of Missouri law, and refers the Court to a Missouri case which recognized that the attorney client privilege is waived if a party affirmatively places the communication at issue. Defendant proposes application of Oklahoma law, which Defendant suggests would be consistent with recognition of waiver of the privilege if a party affirmatively placed the communications or documents "at issue." This Court concludes that both states would find the attorney client privilege waived if the party claiming the privilege places the communication at issue.[6]

Numerous courts addressing the attorney work product doctrine have concluded that it is a procedural immunity and therefore governed by the Federal Rules of Civil Procedure. *See United Coal Companies v. Powell Construction Co.,* 839 F.2d 958 (3rd Cir. 1988); *In re A.H. Robins Co.,* 107 F.R.D. 2 (D.Kan.1985).

### B. HAS DEFENDANT PLACED THE DOCUMENTS AT ISSUE?

Plaintiff's primary argument is that Defendant has placed the documents "at issue" and Defendant has therefore waived any applica-

ble attorney client or work product privileges. Plaintiff claims that the cease and desist letters were sent in bad faith. Plaintiff claims a review of the research done by STK which MLBPA relied upon in deciding to send the letters is integral to Plaintiff's case. Plaintiff believes that the research may indicate whether or not Defendant acted in bad faith in sending the cease and desist letters.

■ Three factors are consistently applied by the courts in evaluating whether or not a party has waived an otherwise applicable privilege through some affirmative act.

1. Whether the assertion of the privilege is the result of some affirmative act, such as filing suit or asserting an affirmative defense, by the asserting party.

2. Whether the asserting party, through the affirmative act, put the protected information at issue by making it relevant to the case.

3. If the privilege was applied, would it deny the opposing party access to information that was vital to the opposing parties defense.

*See Hearn v. Rhay,* 68 F.R.D. 574, 580 (E.D.Wash.1975).[7]

■ Plaintiff has asserted claims based on tortious interference with contract, negligence, libel, and prima facie tort. Plaintiff acknowledged at oral argument that Plaintiff's negligence claim would not be pursued. In Plaintiff's causes of action based on tortious interference with contract and prima facie tort, Plaintiff has the burden to establish Defendant's intent. It may be easier for Plaintiff to prove Plaintiff's case by having access to documents which are otherwise protected by attorney client or work product privileges. This is often true. The Court will not compel discovery of privileged docu-

---

**6.** One primary difference in the application of Missouri law is that, according to ·Plaintiff, Missouri does not protect as "attorney client" communication, communications between attorneys that do not involve clients. Plaintiff states that Plaintiff was unable to find any cases expressly recognizing "attorney to attorney" communication as privileged. The Court is unwilling, absent express Missouri case law providing otherwise, to reach an interpretation of attorney client privilege that would fail to permit any communi-

cations between attorneys about a client's situation as privileged.

**7.** In *Frontier Ref., Inc. v. Gorman Rupp Co.,* 136 F.3d 695, 699 (10th Cir.1998), the Tenth Circuit Court of Appeals favorably discussed *Hearn* in attempting to construe applicable Wyoming privilege laws. Plaintiff refers the Court to *Baker v. General Motors Corp.,* 197 F.R.D. 376 (W.D.Mo. 1999), which applied the *Hearn* factors in determining waiver based on Missouri state law.

ments simply to permit a party to more easily prove the elements of his cause of action.

## C. AFFIRMATIVE ACTS OF DEFENDANT

### Affirmative Assertion of Good Faith

■ Plaintiff asserts Defendant has placed the documents at issue by Defendant's affirmative acts. Plaintiff initially asserts that Defendant is not merely denying Plaintiff's claim that Defendant acted in bad faith, but that Defendant affirmatively asserts that Defendant acted in good faith, creating the affirmative act required in *Hearn* and other courts.[8]

The Court will not base its decision on whether the privilege was waived on the semantic distinction of whether Defendant has denied Plaintiff's assertion of bad faith or made an affirmative assertion of good faith. Plaintiff has asserted a cause of action which requires Plaintiff to prove the bad faith of Defendant.[9] Defendant does not assert an affirmative act or defense by denying that Plaintiff can prove an element of an offense which is Plaintiff's burden to prove. Defendant has gone a bit further than merely denying that Defendant acted in bad faith. Defendant has asserted that it acted in good faith when it sent the "cease and desist" letters. However, the Court cannot characterize Defendant's position, at this point, as constituting an "affirmative act." The Court finds that no waiver of otherwise applicable privileges has occurred based on the general assertion by Defendant that it did not act in bad faith but acted in good faith. Courts addressing whether a waiver occurs because

a party asserts good faith when the opposing party has the burden of establishing bad faith have found no waiver based on this argument. *See, e.g., State Farm Mutual Automobile Insurance Co. v. Lee*, 13 P.3d 1169, 1180 (Ariz.2000) (denial of bad faith and assertion of good faith did not waive the privilege).

Plaintiff refers the Court to *State Farm*, noting that *State Farm* is similar to the pending action. *State Farm* is factually similar to this action, and the *State Farm* court found that the defendant had waived the otherwise applicable privileges. The finding and reasoning of the *State Farm* court does not compel a finding of waiver in this case. *State Farm* is a 3–2 decision, with two vigorous dissents. The *State Farm* Court noted the importance of the insured/insurer relationship—not present in this case. *State Farm*, 13 P.3d at 1175 n. 3 Finally, in *State Farm* the Defendant focused on the subjective good faith belief of the law by the insurance adjusters. The insurance adjusters relied on the advice of counsel in reaching an understanding of the law. The *State Farm* court characterized the defendant's defense as a "sword and shield" approach which asserted a subjective good faith belief and understanding of the law based in part on the advice of counsel, yet denied any access to the counsel's advice. *State Farm*, 13 P.3d 1169, 1180. Defendant's in this case have not as deeply steeped their "good faith defense" in the subjective reliance on the advice of counsel.[10]

### Asserting Reliance of Advice of Counsel

■ Plaintiff asserts that Defendant has placed the advice of counsel at issue because

---

8. Defendant's "Sixth Defense" is that "Defendant's conduct was in all respects justified and undertaken in good faith in an attempt to protect rights that MLBPA had or reasonably believed it had based on the facts and existing law." Defendant's "Tenth Defense" is that "The statements contained in the letters referred to in the Fifth Claim for Relief were true or, in the alternative, were believed by MLBPA in good faith to be true."

9. The Court separately addresses Plaintiff's cause of action based on libel, below.

10. The *State Farm* court notes:
   It is true that Plaintiff's raised the subjective bad faith of State Farm's employees, but it is

not State Farm's denial of that allegation that waives the privilege. Nor does State Farm's affirmative assertion of good faith waive the privilege. It is, rather, State Farm's affirmative assertion that its actions were reasonable because of its evaluation of the law, based on its interpretation of the policies, statutes, and case law, and because of what its personnel actually knew and did.

*State Farm*, 13 P.3d at 1180. Defendant could be characterized as fitting the first or second category described by the *State Farm* court. The *State Farm* court concluded that neither of these categories waived the privilege.

Ms. Heeter read and relied on a legal memorandum drafted by attorneys at STK in making the decision to send the letters. Ms. Heeter plays a dual role in this action. She is an attorney employed by Defendant as Director of Licensing, and is also an employee of STK. Defendant has represented that Ms. Heeter read a legal memorandum drafted by STK attorneys.[11] Defendant's attorney, at oral argument, stated that Ms. Heeter, in reaching the decision to send the cease and desist letters relied upon numerous factors, including her legal experience, her licensing experience, and the legal memorandum that she reviewed.

Plaintiff, to the extent Plaintiff obtains an admission from Defendant that Defendant relied, at least in part, on the legal memorandum in reaching a decision to send the cease and desist letter, is obtaining it by deposing Defendant's attorney or employee, or asking for admissions of Defendant. The Court does not find this act sufficient to have placed the documents "at issue" by Defendant. Essentially, Plaintiff is still making the affirmative act, and Defendant is responding.

*Aull v. Cavalcade Pension Plan,* 185 F.R.D. 618 (D.Col.1998), addressed a situation factually similar to the pending action. In that action, Plaintiff asserted that the Defendant claimed good faith and relied on the advice of counsel. Defendant claimed that Plaintiff had the burden to establish that the Defendant acted in bad faith. The Court observed,

> The Defendants' denial of such allegations do not amount to an affirmative act which supports an at issue waiver. Similarly, the fact that Defendant Carlene Stewart has

stated in deposition testimony that the Plan Committee relied on advice of counsel in denying Mr. Aull's claim does not establish an at issue waiver as to this advice. This statement alone does not indicate that the Defendants have taken affirmative action to place the advice of the Plan Committee's counsel at issue.

*Id.* at 630.

The Court finds that Defendant has not placed the documents "at issue" by responding to questions posed by Plaintiff. This is, however, an area where future actions of Defendant could dictate that the documents be produced. Generally, the fact that a client talked to an attorney, the date that the communications occurred, and the individuals present when the communications occurred are not privileged. Both Plaintiff and Defendant may make these inquiries during either discovery or at trial without waiving the attorney client privilege. However, the content of the communications is privileged. If Plaintiff asks questions regarding the content of the memorandum that the STK attorneys prepared and Ms. Heeter reviewed, Defendant must assert the privilege or waive it. If Defendant asks, at trial, whether Ms. Heeter acted in accordance with STK's legal advice, Defendant waives the attorney client privilege.[12]

*Assertion of Affirmative Defense to Libel Claims*

■ Plaintiff asserts a separate cause of action based on libel, alleging that the cease and desist letter contains libelous statements. Defendant urges an affirmative defense to Plaintiff's libel action based on 12 O.S.

---

11. Defendant acknowledges that Ms. Heeter read the memorandum created by Stacey Stark prior to the date that the cease and desist letters were sent to Champs and Cardtoons in Response to Interrogatory Number 9. [Doc No. 188–1, Exhibit 1, Response No. 9]. Defendant states that, in determining whether Champs would violate any of Defendant's rights by printing the Cardtoons cards Defendant relied "on the knowledge and experience of its Director of Licensing, Judith S. Heeter, as well as the experience and knowledge of the Players Association's licensing staff." *See* [Doc. No. 188–1, Exhibit A, Interrogatory Response No. 11].

12. *State Farm Mutual Automobile Insurance Company v. Lee,* 13 P.3d 1169, 1182–83 (Ariz. 2000) discusses some of the difficulties a Defendant will face in attempting to "walk such a line."

> This may put State Farm in the difficult position of admitting that it sought its attorneys' advice on stacking, then attempted to prevent the factfinder from knowing whether it ignored, followed, or disagreed with that advice. The pragmatic difficulties of the matter are obvious.

*State Farm* at 1183.

**684**

§ 1443.1.[13] Plaintiffs argue that this affirmative defense has placed the documents at issue. This argument was raised by Plaintiff for the first time in Plaintiff's Reply Brief. The argument has not been fully developed, and Defendant has not specifically responded to this argument.

Section 1443.1 provides that a communication is privileged and cannot be charged as libel if it is made in "any legislative or judicial proceeding or any other proceeding authorized by law." If § 1443.1 can be applied to the facts of this case,[14] Plaintiff argues that "by invoking this privilege, MLBPA has created an issue of fact regarding the state of mind of the attorneys who sent the letters, and whether or not the threats contained in the letters were made in good faith and in serious contemplation of litigation."

Plaintiff refers the Court to *Kirschstein v. Haynes*, 788 P.2d 941 (Okla.1990) in support of its position. The issue identified in *Kirschstein*, is whether or not the writer had a good faith belief that litigation was seriously contemplated.

> As long as the speaker or writer of the defamatory communication has an actual subjective good faith belief that litigation is seriously contemplated the privilege attaches *whether or not he has a good faith belief in the truth of the communication.*

*Kirschstein*, 788 P.2d at 952 (emphasis added).

Plaintiff's focus is on the good faith belief of Defendant's attorneys. An STK attorney wrote and signed the letter on the behalf of Defendant. The focus should more appropriately be whether or not Defendant had a good faith belief that litigation was contemplated.

The Court cannot find, based on § 1443.1 or *Kirschstein*, that Defendant has waived asserted privileges with respect to all of the documents listed on the privilege log. *Kirschstein* indicates that subjective good faith belief that "litigation is seriously con-

templated" is placed at issue by the assertion of the privilege. Plaintiff is entitled to depose Defendant and question Defendant about whether or not Defendant seriously contemplated litigation. Plaintiff is entitled to documents addressing or discussing whether Defendant had a good faith belief that litigation would ensue. Defendant is therefore directed to review the documents listed in Defendant's privilege log and determine whether, based on Defendant's assertion of the defense, *Kirschstein*, and this Court's Order, any of the listed documents are relevant to a good faith belief that a lawsuit would be filed. If so those documents should be produced. *Kirschstein* and this Order do not require production of documents related solely to whether or not defendant had a good faith belief in the truth of the communication.

### D. Work Product Doctrine

■ Although the work product doctrine and the attorney client privilege are separate and distinct, discussion at oral argument and in the briefs has primarily focused on the attorney client privilege. Generally, a party can obtain work product materials only after showing substantial need and undue hardship. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

■ Plaintiff seeks opinion work product which is afforded greater protection than fact work product. "In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. at 510–13, 67 S.Ct. 385. The Circuits are split as to the degree of protection afforded opinion work product. Some circuits have found opinion work product is absolutely protected while others have permitted discovery. The Tenth Circuit Court of Appeals has noted the

13. Defendant's Eleventh Defense is that "The statements contained in the letters referred to in the First Amended Complaint were privileged under O.S. Tit. 12, § 1443.1 and under common law."

14. None of the parties have addressed the applicability of this defense to the facts presently before the Court. Exactly how this defense applies to the present facts has not been explained.

split in the Circuits, but has not decided the issue.

The circuits are divided on whether there is absolute protection for opinion work product. Some courts have held that opinion work product is absolutely protected; others have concluded it may be discovered under compelling circumstances. *Compare Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir.1992) (holding opinion work product may be discovered when mental impressions are at issue and need for material is compelling), *and In re Sealed Case*, 676 F.2d 793, 809–10 (D.C.Cir.1982) (requiring showing of extraordinary justification to overcome protection of opinion work product), *with Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 735 (4th Cir.1974) (holding opinion work product to be absolutely protected). The Supreme Court has not yet decided whether opinion work product is absolutely immune from discovery. *Cf. Upjohn Co. v. United States*, 449 U.S. 383, 401–02, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (declining to decide whether any showing of necessity can overcome opinion work product protection but stating that showing of substantial need and inability to obtain information without undue hardship is insufficient to compel disclosure).

*Frontier Refining, Inc. v. Gorman–Rupp Co.*, 136 F.3d 695, 704 n. 12 (10th Cir.1998).

Plaintiff refers the Court to *Holmgren v. State Farm Mutual Automobile Ins. Co.*, 976 F.2d 573 (9th Cir.1992). The *Holmgren* court found that opinion work product "may be discovered and admitted when mental impressions are at *issue* in a case and the need for the material is compelling." *Holmgren* at 577 (italics in original). The *Holmgren* court

does not specifically discuss which party must place the documents "at issue." [15] Plaintiff's argument seems to assume that Defendant is required to place the documents at issue because Plaintiff focuses on Defendant's "affirmative acts" which justify production of the documents.

Assuming that discovery of opinion work product is permissible,[16] those courts permitting discovery have all indicated that discovery of opinion work product is the exception rather than rule. *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 513, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ("If there should be a rare situation justifying production of work product, petitioner's case is not of that type."); *Charlotte Motor Speedway, Inc. v. International Insurance Co.*, 125 F.R.D. 127 (M.D.N.C. 1989) ("[M]any courts have recognized narrow exceptions to this protection under certain circumstances.").

If the Court decided to follow the "at issue" line of cases, the Court concludes that discovery of opinion work product cannot be permitted with no consideration as to who placed the information "at issue." As discussed above, Defendant has not placed this information at issue. Therefore, under the line of cases permitting discovery of opinion work product when the opinion work product is "at issue," the Court concludes that the documents in this case should not be produced.

A second line of cases permits discovery upon proof of "extraordinary circumstances." *See In re Sealed Case*, 676 F.2d 793, 809–810 (D.C.Cir.1982). In *In re Sealed*, the court recognized the possibility of an exception to the work product rule, but noted that no attempt to make an extraordinary showing had been made. The court does not discuss

---

**15.** In *Holmgren*, the Plaintiff filed a bad faith action against their insurance company. The Plaintiff appears to be the party to have placed bad faith "at issue." However, the *Holmgren* court also notes that in bad faith cases insurers may call their adjusters to testify with regard to their opinion of the underlying claim. This could suggest that a Defendant placed information "at issue." In *Charlotte Motor Speedway, Inc. v. International Insurance Co.*, 125 F.R.D. 127 (M.D.N.C.1989), a case relied upon by Plaintiff, the Plaintiff objected to the discovery of certain work product materials related to the

settlement of an underlying lawsuit. The *Charlotte Motor* Court noted the significance of this fact. The court additionally cited to another case permitting discovery of opinion work product and noting that that case found the privilege inapplicable because the activity of counsel was the basis of the parties defense. *Id.* at 130.

**16.** As noted by the parties and the Tenth Circuit Court of Appeals, at least one line of authority has concluded that opinion work product protection is absolute.

or analyze the requisite "extraordinary showing." The Court finds that Plaintiff has not met the required burden to justify production of opinion work product.

### III. PRODUCTION OF OTHER CEASE AND DESIST DOCUMENTS

Plaintiff's document requests number 14 and 16 request all cease and desist letters between January 1, 1992 and June 18, 1993, in which Defendant claims an entity violated rights of Defendant. Plaintiff's document request numbers 15 and 17 ask that Defendant produce all pleadings which followed similar cease and desist letters between January 1, 1992 and June 18, 1993. Defendant objected to the request based on Fed.R.Civ.P. 26, but produced pleadings related to three different cases. These documents were not discussed by the parties at oral argument and were not addressed in Defendant's brief.

Plaintiff asserts the documents are relevant because Plaintiff is attempting to establish a plan or pattern on the part of Defendant. The issue presented to the Court is whether this information is discoverable. Plaintiff has proffered a reason to support discovery of the documents. Defendant has not countered Plaintiff's argument. The Court concludes that the documents requested, to the extent that any have not been produced, should be produced.

### IV. PRODUCTION OF FINANCIAL DOCUMENTS.

Plaintiff requests certain financial documents [17] from 1993 and 2000 [18] related to Defendant. Defendant argued, at oral argument, that although such information might be discoverable, production of the documents should wait until a date which is closer to the time of trial. Defendant also asserts that discovery at this stage is premature because Plaintiff has not alleged sufficient facts to warrant a claim for punitive damages.

This Court does not generally favor delaying discovery absent sufficient justifiable reasons. In *YWCA of Oklahoma City v. Melson,* 944 P.2d 304 (Okla.1997), the court considered and rejected a similar request that discovery for exemplary damages be delayed.

The Discovery Code gives no support for setting apart the process of discovery for exemplary-damages proof as a separate disclosure rubric. *All* discovery must be filtered through the procedure established by 12 O.S.1991 § 3226(C) which would allow, upon "good cause," a *protective order* if sensitive material is sought to be produced. The new submission procedure for exemplary damages clearly *authorizes* (1) a "separate" trial stage for the jury consideration of that award and (2) submission of financial-worth proof for assessing the amount of that award. *It neither declares nor authorizes any form of interim moratorium on compelled pretrial production of financial records.*

*YWCA,* 944 P.2d at 309–310 (italics in original). *See also Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.,* 130 F.R.D. 149, 152 (D.Kan.1990) ("When a punitive damages claim has been asserted by the plaintiff, a majority of federal courts permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a prima facie case on the issue of punitive damages.").

The Court concludes that the financial documents should be produced. However, the Court limits production to Defendant's year 2000 balance sheets. The Court concludes that the 1993 financial documents should not be produced. Plaintiff has not established that the documents are relevant or probative.

IT IS SO ORDERED.

---

**17.** Plaintiff requests balance sheets, income statements, profit and loss statements, and cash flow statements.

**18.** Plaintiff initially requested 1993 through 2000, but at oral argument, Plaintiff appeared to limit Plaintiff's request to 1993 and 2000.