John ROEHRS, M.D. and Jean Roehrs,
his wife, Plaintiffs,

v.

MINNESOTA LIFE INSURANCE
COMPANY, et al.,
Defendants.

No. CV–03–1373–PHX–LOA.

United States District Court,
D. Arizona.

June 14, 2005.

Douglas H. Clark, Jr., Esq., Mesch Clark & Rothschild PC, Tucson, AZ, Louis C. Webb, Esq., Louis C. Webb PC, Phoenix, AZ, for Plaintiffs.

Christopher P. Staring, Esq., Erwin Diederiek Kratz, Fennemore Craig PC, Tucson, AZ, for Defendants.

### ORDER

ANDERSON, United States Magistrate Judge.

This matter arises on Plaintiffs John Roehrs, M.D. and Jean Roehrs' (collectively the "Roehrs") Motion To Compel the production of certain documents from Defendants' claim file. (document # 88) Defendants oppose the production of the documents on the grounds that the documents are privileged from discovery pursuant to the attorney-client privilege. All parties have previously consented in writing to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (document # 24)

After considering the subject motion, Defendants' Opposition To Motion To Compel (doc. # 93), and the file as a whole,[1] the Court finds that the Defendants have impliedly waived the attorney-client privilege as to certain documents. Thus, the Court will grant the motion in part, deny it in part and compel production of certain withheld documents.

### BACKGROUND

The Roehrs filed this lawsuit on July 18, 2003 against Minnesota Life and Standard Insurance Company (collectively "the Defendants"), alleging breach of a disability income insurance policy issued and then re-issued by Minnesota Life, the tortious breach of the covenant of good faith and fair dealing, and other state law claims. (Complaint, document # 1) Dr. Roehrs, a Board-certified specialist in pulmonary medicine, claims that as the result of the development of certain health issues (a low-back condition requiring disc surgery and hip replacement surgery), he became disabled within the meaning of the subject insurance policy and could no longer perform his regular occupation (emergency room practice and critical care of pulmonary procedures) as defined by the parties' insurance contract. (Case management Plan, doc. # 17) The Roehrs submitted claims for benefits on different dates to Defendants which denied their claims. As a result of Defendants' alleged wrongful denial of insurance benefits and the Roehrs' claim for diminution of income, the Roehrs seek compensatory damages, punitive damages, and their reasonable attorneys' fees and costs. *Id.*

Defendant Minnesota Life Insurance Company issued the subject disability policy to the Roehrs. Defendant Standard Insurance Company was assigned an interest in the Roehrs' insurance policy and assumed the management of the Roehrs' claims. (doc. # 17) Each Defendant, represented by the same counsel, denies that it wrongfully breached the subject insurance policy (Amended Answer, doc. # 38) and acted reasonably in all aspects of the Roehrs' disability claims. (doc. # 17) Defendants have filed summary judgment motions on the applicability of ERISA to the subject insurance policy, ERISA's alleged preemption of the Roehrs' state law claims, and on other issues. (doc. # 95 and # 99) The Roehrs have also filed a summary judgment motion on the Roehrs' breach of contract claims and bad faith claim. (doc. # 97) Oral arguments on these motions have yet to be scheduled. Federal jurisdiction is predicated upon 28 U.S.C. § 1332, diversity of citizenship and the amount in controversy exceeds the sum of $75,000. (doc. # 17)

In this discovery motion, the Roehrs contend that three of Defendants' claims adjusters (Christine Peterson, Emily Collins and Jon B. Meier) relied, in part, on written legal advice in their decisions to deny the Roehrs' disability claims and Defendants have wrongfully withheld production of these documents from counsel during discovery. These documents are memorandum notes from the adjusters to Defendants' lawyers and the lawyers' written replies to the adjusters' questions. Exhibit A of the subject

---

1. No Reply was timely filed by the Roehrs.

motion is a copy of the Defendants' Rule 26(a)(1) Disclosure Statement, dated March 30, 2004, that identifies nine memoranda or memorandum notes by separate, non-numbered bullet points.[2] The Roehrs claim that by relying, even in part, on legal advice to support Defendants' claims of good faith and reasonableness in handling the Roehrs' claims, the adjusters impliedly waived the attorney-client privilege [3] under Arizona law and cite as their authority two Arizona cases: *State Farm Mutual Automobile Insurance Co. v. Lee,* 199 Ariz. 52, 13 P.3d 1169, 1180 (2000) and *Clearwater v. State Farm Mutual Automobile Insurance Co.,* 164 Ariz. 256, 792 P.2d 719 (1990). The Roehrs also provide the Court the specific pages of three adjusters' depositions as support for their contentions, Exhibit B, Motion To Compel, and request the Court either order production of the documents or conduct an *in camera* inspection of them.

Defendants deny that they have raised any claim or defense that waived the attorney-client privilege and contend that the adjusters' consultations with counsel or counsels' writings do not automatically waive the privilege. Defendants also cite the *Lee* case and the federal case of *Cardtoons, L.C., v. Major League Baseball Players Association,* 199 F.R.D. 677 (N.D.Okla.2001) but contend that

*Clearwater,* cited as support by the Roehrs, is inapplicable to the issue *sub judice* because it did not address the attorney-client privilege.[4]

■ The subject motion arises under Federal Rule of Civil Procedure 37(a), which authorizes a party to apply for an order to compel disclosure or discovery. "If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed.R.Civ.P. 37(a)(2)(A). The party resisting discovery has a "heavy burden" of showing why discovery should be denied. *Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir.1975). If the information sought is deemed by the court to be irrelevant, the court should restrict discovery to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R.Civ.P. 26(c); *Herbert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979).

## *ATTORNEY–CLIENT PRIVILEGE*

■ Federal courts look to state law to determine the applicability of evidentiary privileges to discovery disputes in diversity actions. Fed.R.Evid. 501.[5] Because this liti-

---

2. Because several of these bullet points reference *individuals other than* adjusters Peterson, Collins and Meier, for which there is no discussion in the subject motion, the Court finds that Plaintiffs failed to establish a waiver of the attorney-client privilege as to these documents. See, bullet points # 7 and # 8.

3. Exhibit A also identifies three bullet-point documents (# 7, # 8 and # 9) wherein Defendants also claimed the documents are protected by the work-product doctrine in addition to the attorney-client privilege. "The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona,* 881 F.2d 1486, 1494 (9th Cir.1989).

Federal Rule of Civil Procedure 26(b)(3) governs the applicability of the work-product privilege in a federal court. *Doubleday v. Ruh,* 149 F.R.D. 601, 605 (E.D.Cal.1993); *United Coal Companies v. Powell Construction Co.,* 839 F.2d 958, 966 (3d Cir.1988)(work product privilege in diversity cases controlled by Federal Rule of Civil Procedure 26(b)(3), rather than state law).

Since Defendants fail to raise Rule 26(b)(3) in their response to the subject motion to support protection under the work-product privilege, the Court will grant the subject motion if the sought-after documents are not protected solely by the attorney-client privilege. *United States v. City of Torrance,* 163 F.R.D. 590, 593 (C.D.Cal. 1995)("The party claiming work product immunity has the burden of proving the applicability of the doctrine.").

4. The Court agrees with Defendants. *Clearwater* does not mention the attorney-client privilege, much less discuss it, and, contrary to this first-party bad faith action, involves the impropriety of giving a "fairly debatable" instruction in a third-party bad faith case.

5. Under Fed.R.Evid. 501, the applicability of privileges is governed by state law.

"[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law."

gation is brought under Arizona law based upon diversity of citizenship, this Court applies Arizona law with respect to the attorney-client privilege. *Baker v. CNA Ins. Co.*, 123 F.R.D. 322, 323 (D.Mont.1988); *Montgomery County v. Microvote Corp.*, 175 F.3d 296, 301 (3d Cir.1999).

▮ Pursuant to the Federal Rules of Civil Procedure, a party is entitled to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party....." Fed.R.Civ.P. 26(b)(1). Generally, the purpose of discovery is to remove surprise from trial preparation so the parties obtain evidence necessary to evaluate and resolve their dispute. *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604–605 (C.D.Cal.1995). "Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence; but the discoverable information need not be admissible at the trial." *Id.; U.S. ex rel Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 391 (C.D.Cal.2002). The party resisting production bears the burden of persuasion. *Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D.Cal.1997)("[T]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying explaining and supporting its objections."). The party seeking to invoke the protection of the attorney-client privilege carries the burden of proving to a reasonable certainty that the elements of the privilege exist. *Clarke v. American Commerce National Bank*, 974 F.2d 127, 129 (9th Cir.1992); *United States v. Abrahams*, 905 F.2d 1276, 1283 (9th Cir.1990). Because the privilege "impedes full and free discovery of the truth," the privilege is strictly construed. *Roman Catholic Diocese v. Superior Court*, 204 Ariz. 225, 230, 62 P.3d 970, 975 (2003); *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *EEOC v. Safeway Store, Inc.*, 2002 WL 31947153, *3 (N.D.Cal.2002). Moreover, in discovery matters, including rulings on the assertion of the attorney-client privilege.

Fed.R.Evid. 501.

Arizona law provides the trial judge with broad discretion, reviewed only for abuse, which includes the right to decide controverted factual issues, to draw inferences where conflicting inferences are possible and to weigh competing interests. *Lee*, 13 P.3d at 1174; *Brown v. Superior Court*, 137 Ariz. 327, 331, 670 P.2d 725, 729 (1983).

▮ Under Arizona law, the attorney-client privilege is governed by statute and the case law interpreting it.[6] *Roman Catholic Diocese v. Superior Court*, 204 Ariz. 225, 227, 62 P.3d 970, 972 (2003). Arizona Revised Statute ("A.R.S.") § 12–2234 (Supp. 2002) codifies the attorney-client privilege applicable in civil cases. It provides in relevant part:

A. In a civil action an attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment.

B. For purposes of subsection A, any communication is privileged between an attorney for a corporation ... and any employee, agent or member of the entity or employer regarding acts or omissions of or information obtained from the employee, agent or member if the communication is either:

1. For the purpose of providing legal advice to the entity or employer or to the employee, agent or member.

2. For the purpose of obtaining information in order to provide legal advice to the entity or employer or to the employee, agent or member.

C. The privilege defined in this section shall not be construed to allow the employee to be relieved of a duty to disclose the facts solely because they have been communicated to an attorney.

"The reason for the privilege is not to protect the client, but to encourage the free exchange of information between the attorney and the client and to promote the administration of justice." *State v. Holsinger*, 124 Ariz.

**6.** A.R.S. § 13–4062(2) is the statutory codification of the attorney-client privilege in criminal cases.

18, 22, 601 P.2d 1054, 1058 (1979). Of course, there must be an attorney-client relationship before the privilege exists. *Alexander v. Superior Court*, 141 Ariz. 157, 162, 685 P.2d 1309, 1314 (1984)(party divulges secrets to lawyer to secure advice). To be privileged, the communication must be made to or by the lawyer for the purpose of securing or giving legal advice, must be made in confidence, and must be treated as confidential. *Samaritan Foundation v. Goodfarb*, 176 Ariz. 497, 501, 862 P.2d 870, 874 (1993); 8 John H. Wigmore, *Evidence* § 2292, at 554 (McNaughten rev. ed.1961); *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir.1961)("What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer.") (Friendly, J.). Thus, not all communications to one's lawyer are privileged.

### DISCUSSION

■ With these principles in mind, the Court finds that the *Lee* case is directly on point, controlling in this federal litigation and that the Defendants have impliedly waived the attorney-client privilege as to adjusters Peterson, Collins and Meier. In affirming the test first outlined in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash.1975), the Arizona Supreme Court directs that there be consideration of three criteria to find an implied waiver of the attorney-client privilege:

(1) assertion of the privilege was a result of some affirmative act, such as filing suit [or raising an affirmative defense], by the asserting party; (2) through this affirmative act, the asserting party put the pro-

tected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Lee*, 13 P.3d at 1173.

■ The Roehrs have established all three criteria as to the documents adjusters Peterson, Collins and Meier considered from and to Defendants' in-house counsel in ultimately denying the Roehrs' claims.

In *Lee*, a first-party bad faith case like the case at bar, the Arizona Supreme Court found that the trial judge's order compelling the insurer to produce certain documents over the claim of the attorney-client privilege was correct because the *Hearn* test had been met and the insurer had impliedly waived the attorney-client privilege. The majority of this Court concluded that in first-party bad faith cases such as *Lee* "in which *the litigant* claiming the privilege *relies* on and advances as a claim or defense a subjective and allegedly reasonable evaluation on the law-but an evaluation that necessarily incorporates what the litigant learned from its lawyer-the communication is discoverable." *Id.* at 1175 (emphasis in original). Contrary to Defendants' arguments herein and objection expressed during the Peterson deposition, adjusters Peterson, Collins and Meier [7] impliedly waived the privilege by their deposition testimony that each considered and relied upon, among other things, the legal opinions or legal investigation in denying that the Roehrs' claims were covered under the reinstated policy.[8]

7. No mention is made in the parties' briefing on this motion or in Exhibit A as to what specific legal documents adjuster Meier considered. It is the intent of this order that Defendants disclose the legal documents in the Roehrs' claim file referred to on page 185 of Meier's deposition that Meier considered in making his decision to deny the Roehrs' claims.

8. For example, Christine Peterson gave the following answers in her March 30, 2005 deposition:

Q: (By Douglas H. Clark, Jr.) After you did all your work in this case, you gathered all the facts from Dr. Roehrs, you gathered all the facts from the medical people, you asked for medical opinions, you asked for legal opinions, you asked for your supervisors' opinions, did you have to make

a decision as to whether to allow or deny this claim?
A: (By Ms. Peterson) Yes I did.
Q: What was your decision?
A: That it was not a covered disability under his reinstated policy.
Q: And in doing that did you think you were making that decision giving equal consideration to the company and the insured?
A: Yes, I did.
Q: Did you think that your denial was based on your belief justified by the facts and factual investigation and the policy, the medical investigation and the legal investigation, that this supported denial of the claim?
   Mr. Staring: I object to the form. Answering the question does not constitute an expressed or implied waiver of the attorney-client privilege.
A: Yes, I do.

Adjusters Collins and Meier gave similar answers to similar questions in their depositions. As the *Lee* Court noted, an insurer "is not liable for bad faith just because hindsight shows its employees were wrong[ ]" but an insurer "is liable for bad faith if the evidence shows its employees could not or did not reasonably believe that the [insured's] claims could be rejected within the bounds of the law." *Id.* As in *Lee*, the information in the documents in question are "very relevant and material-what information could be more important to determining what these employees and managers actually knew and reasonably believed than the advice they obtained from counsel with respect to the validity" of the Roehrs' claims. *Id.* Here, as in *Lee*, a *Hearn*-like affirmative act was made by the adjusters putting the privileged materials at issue. While the Defendants and the aforesaid three adjusters do not claim that they denied the Roehrs' claims solely because of its/their lawyers' advice, Defendants can not reasonably deny that what these employees knew at the time they denied the Roehrs' claims included information received from their lawyers. What formed the subjective good faith beliefs and mental states of these three adjusters and the reasonableness of their decisions is critical in defense of the Roehrs' bad faith claim. Application of the privilege here would deny the Roehrs vital information to test the reasonableness and good-faith basis of Defendants' denial of their claims and would establish the shield-sword incongruity condemned in *Lee*.

The case of *Cardtoons, LC., v. Major League Baseball Players Association*, 199 F.R.D. 677 (N.D.Okla.2001) provides no assistance to Defendants. It is non-controlling authority for this litigation just as the *Lee* case was non-controlling on the Oklahoma magistrate judge in *Cardtoons*. As the judge in *Cardtoons* expressly recognized, that case was distinguishable from *Lee* because it did not involve a first-party bad faith case with the special insured/insurer relationship and the defense in *Cardtoons* could not be characterized as an "affirmative act" to meet that element of the *Hearn* test.

Q: Did you believe that your denial of the claim was well-founded on the basis of your investigation?

This Court exercises its discretion to conclude that the advice of Defendants' counsel to Peterson, Collins and Meier is a part of the basis for their defense to the Roehrs' bad-faith allegation and that the privilege has been impliedly waived as to these three adjusters only. Because the Roehrs have made no showing that the Defendants waived the privilege as to any other adjuster *vis a vis* the subject documents identified in Exhibit A or that a sufficient nexus has been shown as to the other documents (# 7 and # 8) identified in Exhibit A and Peterson, Collins and Meier, the Roehrs' request will be denied to them.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion To Compel the production of documents (document # 88) is **GRANTED** in part and **DENIED** in part. Defendants shall produce complete and legible copies of documents identified as bullet points which the Court has numbered # 1 through # 6 and # 9 in sequence of Exhibit A, Defendants' Rule 26(a)(1) Disclosure Statement, dated March 30, 2004, within 10 days hereof.

**IT IS FURTHER ORDERED** that Defendants' Request for Oral Argument is **DENIED** as unnecessary for the Court to decide this motion.

Chambers staff shall fax a copy of this Order to counsel of record today.

A: Yes, I do.
Exhibit B, pages 157–158 of deposition of Christine Peterson.