**Julie HOLMGREN, Plaintiff–Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellant.**

**Julie HOLMGREN, Plaintiff–Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellant.**

**Nos. 91–35350, 91–35841.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 2, 1992.

Decided Oct. 2, 1992.

As Amended on Denial of Rehearing Nov. 9, 1992.

William Conklin and Allen P. Lanning, Conklin, Nybo, LeVeque & Murphy, Great Falls, Mont., for defendant-appellant.

Alexander Blewett, III, and Michael J. George, Hoyt & Blewett, Great Falls, Mont., for plaintiff-appellee.

Before FARRIS, NORRIS, and KOZINSKI, Circuit Judges.

FARRIS, Circuit Judge:

In these consolidated appeals, State Farm Mutual Automobile Insurance Company appeals the district court's judgment entered on a jury verdict for Julie Holmgren in her action for unfair claim settlement practices under Mont.Code Ann. § 33–18–201. State Farm also appeals the district court's award of attorney expenses under Fed.R.Civ.P. 37(c). We affirm in all respects except the size of the Rule 37(c) award.

I

Julie Holmgren was injured on July 16, 1986, in Helena, Montana, when State Farm's insured, Sharon Cannon, ran a stop sign and collided with the car in which Holmgren was riding. Cannon was intoxicated at the time. She left the scene of the Holmgren accident and collided with three other cars in the vicinity. Cannon pled guilty to several charges, including driving while under the influence of alcohol.

Immediately after the accident, Holmgren was treated at a local emergency room for headache and neck and back pain. She thereafter saw Dr. Bishop, who prescribed physical therapy and recommended that she cease working until January 1987. Holmgren followed his recommendation. Her employer discharged her from her part-time job some time before October 22, 1986. Holmgren received further treatment through 1988.

Within a week of the accident, Holmgren hired an attorney, who promptly contacted State Farm. A State Farm representative, Ron Ashbraner, conducted an initial investigation and concluded that Cannon's liability was clear. At his direction, State Farm reimbursed the Holmgren family for the damage to their automobile, for car rental expenses, and made advance payments for Holmgren's medical expenses and lost wages totaling just over $5,000.

Holmgren's husband had been disabled in 1984 and was unemployed. The Holmgrens lost their home through foreclosure in December 1987. The family's fiscal pressures were regularly communicated to State Farm by Holmgren's counsel.

In December 1987, State Farm's offer to settle for $12,500 was rejected. Unsuccessful settlement attempts led to the July 1988 filing of suit in state court. Cannon's attorney, who had been retained by State Farm, filed an answer admitting injury but denying liability. The suit was settled for $40,000 in October 1989, on the second day of trial. The settlement expressly reserved Holmgren's rights against State Farm for bad faith in the process of adjusting and settling the claim.

Holmgren filed this suit in state court, under Mont.Code Ann. §§ 33–18–201(2), (4), (6) and (13), on November 9, 1989. Invoking diversity jurisdiction, State Farm removed the suit to federal district court. The district court entered judgment of $149,115.40 on a jury verdict for Holmgren, after crediting State Farm for advance payments and the amount paid to settle the Cannon suit. Motion for judgment notwithstanding the verdict was denied on January 24, 1991. State Farm filed timely a notice of appeal from the judgment and the order denying the motion for judgment notwithstanding the verdict.

Holmgren's motion for attorneys' fees under Fed.R.Civ.P. 37(c) for State Farm's denial during discovery of certain requests for admission was granted. Following supplemental briefing, the district court awarded attorneys' fees of $11,639.35. State Farm timely appealed.

## II

■ (1) *Opinion Work Product*—State Farm contends that the district court erred in compelling it to produce and admitting as evidence plaintiff's exhibits 92 and 93. These items are handwritten memoranda drafted during the litigation of the Cannon suit by a State Farm adjuster. They contain a range of values for Holmgren's claims, including aggravation, medical expenses, lost earnings, pain and suffering, loss of course of life and loss of home, fixing the range of potential liability as from $78,000 to $145,000. State Farm argues that these items are opinion work product and protected under Fed.R.Civ.P. 26(b)(3).

Holmgren contends that State Farm failed to object to the admission of the exhibits. We reject the argument. Counsel objected by affidavit to the production of both items as "opinion work product."

The work product doctrine was first articulated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Fed.R.Civ.P.Rule 26(b)(3), which substantially codifies the *Hickman* decision, provides:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The primary purpose of the work product rule is to "prevent exploitation of a party's efforts in preparing for litigation." *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir.1989). Like the discovery process that it limits, the work product doctrine encourages efficient development of facts and issues.

Exhibits 92 and 93 meet the threshold requirements for qualification as work product: both are (a) documents sought by Holmgren that were (b) prepared for trial (c) by a representative of State Farm. They reflect the opinion of a State Farm adjuster on the range of potential liability. *See Reavis v. Metropolitan Property & Liability Ins. Co.*, 117 F.R.D. 160, 164 (S.D.Cal.1987) (recognizing opinion work product of adjusters handling claim).

We need not decide whether Rule 26(b)(3) provides any protection for material prepared for litigation that has terminated. For even if it does, the rule permits discovery when mental impressions are the pivotal issue in the current litigation and the need for the material is compelling.

■ A party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product. *Upjohn Co. v. United States*, 449 U.S. 383, 401–02, 101 S.Ct. 677, 688–89, 66 L.Ed.2d 584 (1981). The Supreme Court, however, has so far declined to decide whether opinion work product is absolutely protected from discovery. *Id.* at 401, 101 S.Ct. at 688.

The leading case denying all discovery of opinion work product is *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 734 (4th Cir.1974) (*Duplan II*). The *Duplan II* court reasoned, "[i]n our view, no showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions or legal theories. This is made clear by the Rule's use of the term 'shall' as opposed to 'may.'" *Id.* at 734. This argument ignores the Advisory Committee notes to the 1970 amendment to Rule 26(b)(3) which state that the Rule "conform[s] to the holdings of the cases, when viewed in light of their facts." In *Hickman*, the Court stated that "[i]f there should be a rare situation justifying production of [work product], petitioner's case is not of that type." 329 U.S. at 513, 67 S.Ct. at 395.

The Supreme Court, in 1946, rejected a proposed amendment to Rule 30(b) that would have given opinion work product absolute protection. *See* Report of Proposed Amendments to Rules of Civil Procedure, 5 F.R.D. 433, 456–57 (1946); Order dated December 27, 1946, 329 U.S. 843 (1946) (omitting reference to Rule 30(b) amendment in enumeration of amendments to rules adopted). That rejection, followed closely by the *Hickman* decision, which ordained a case-by-case approach to work product questions, suggests that the Court did not view the mandatory language of Rule 26(b)(3) as demanding absolute protection of opinion work product.

■ We agree with the several courts and commentators that have concluded that opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling. *See, e.g., Bio–Rad Labs., Inc. v. Pharmacia, Inc.*, 130 F.R.D. 116, 122 (N.D.Cal.1990); *Reavis*, 117 F.R.D. at 164; *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 932–33 (N.D.Cal. 1976); *Bird v. Penn Cent. Co.*, 61 F.R.D. 43, 47 (E.D.Pa.1973); 4 J. Moore, Federal Practice ¶ 26.64[3.–2], at 26–385 & n. 8 (2d ed. 1991); J. Anderson et al., The Work Product Doctrine, 68 Cornell L.Rev. 760, 831–37 (1983). *But see* 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2022, at 188 n. 97, 193, § 2026, at 229–32 (1970).

■ Both elements are met here. In a bad faith insurance claim settlement case, the "strategy, mental impressions and opinion of [the insurer's] agents concerning the handling of the claim are directly at issue." *Reavis*, 117 F.R.D. at 164. Further, Holmgren's need for the exhibits was compelling. Montana permits insureds and third party claimants to proceed under § 33–18–201 against an insurer for bad faith in the settlement process. *See* Mont.Code Ann. § 33–18–242 (1979) (applicable to claims arising after July 1, 1987); *Klaudt v. Flink*, 202 Mont. 247, 658 P.2d 1065, 1067 (1983), *overruled on other grounds, Fode v. Farmers Ins. Exch.*, 221 Mont. 282, 719 P.2d 414 (1986). Unless the information is available elsewhere, a plaintiff may be able to establish a compelling need for evidence in the insurer's claim file regarding the insurer's opinion of the viability and value of the claim. We review the question on a case-by-case basis.

If a party has demonstrated the requisite level of need and hardship, the other party must produce the material.

In *Handgards*, "the lawyers who managed and supervised the former litigation for the defendants [were] being called as

witnesses to express their opinions as to the merits of the prior suits." *Handgards,* 413 F.Supp. at 931. This comment, and others like it in "at issue" cases, is a practical acknowledgment of the fact that, in bad faith settlement cases, insurers may call their adjusters to testify to their opinions as to the lack of viability of the underlying claim. When an insurer chooses to remain mute on the subject, the plaintiff is not foreclosed from developing the same evidence.

The district court did not err in ordering discovery of and admitting Exhibits 92 and 93.

■ (2) *The Remaining Substantive Issues*—Insurance companies are not expected or required to simply open their purses each time a claim is made. They are businesses. Their duty is to investigate timely and only pay legitimate covered claims for which their insureds are liable. When coverage and liability are established beyond any doubt, as in this case, a game of the strong against the weak *can* begin. A claim known to be valid and legitimate can be settled for far less than its actual value if the need for funds by the victim is great enough and the insurance company is obstinate enough to use its knowledge of that fact to force acceptance of a lesser sum. The theory of the game is to put the victim in a position where anything is better than nothing. Section 33–18–201(6) provides that an insurer's obligation to settle a claim promptly arises when liability has become reasonably clear. Most insurance companies recognize that sound business practices favor prompt payment of valid and legitimate claims, but this record establishes bad faith and more.

An example of the exchange between the court and counsel, regarding the jury's allocation of damages between this suit and the underlying suit, evidences the misguided thinking of State Farm and suggests its abandonment of its obligation to act in a reasoned manner in its settlement procedures:

Judge Kozinski: Let me make sure I understand the argument. So, the jury might have thought [Holmgren] was entitled to ninety-five [thousand dollars in the underlying suit], but because the insurance company kind of squeezed her economically and almost had her evicted from her home, and she was out in the street and destitute, they got away with paying forty-five thousand dollars for a ninety-five thousand dollar claim.... Instead of giving a ninety-five thousand dollar credit, they only gave her a forty-five thousand dollar credit, and so they failed to give the insurance company the benefit of the fifty thousand dollars. That's your argument?

Counsel for State Farm: That's my argument. And that could well have been their thinking. We don't know.

. . . . .

Judge Kozinski: Why isn't this harmless error if you so readily adopt my statement of the [previous] question? If in fact you got away with paying forty-five thousand dollars for a claim that was worth ninety-five thousand dollars, why isn't the intervening fifty thousand dollars something they should pay now as part of the bad faith damages because the reason they ... got off so cheap was because of bad faith.... I think it's a little cheeky to stand there and say, gee, we only paid forty-five but we should have gotten a credit for ninety-five because we managed to squeeze her down to forty-five.

Counsel for State Farm: ... [A] jury comes along and says, okay, what were the damages [in the underlying suit] really worth? They might have said twenty-five, in which [case] we would have benefited. They might have said forty-five, in which event we're even. And they might have said, is all I'm saying, ninety-five. I don't know what they said.... When we settle, we settle. If we settle a ninety-five thousand dollar case for forty-five, that's fine. That's what we're entitled to do if they take it. Now, not under the bad faith situation, so they turn around and sue us for bad faith....

Moments later, counsel conceded what the record reflects: that no request was made at trial for a special verdict form on the question of damage allocation.

■ State Farm also argues that the district court erred in charging the jury to determine whether State Farm had violated its duties under subdivisions (2) and (13) of § 33–18–201. State Farm suggests that these provisions do not apply in cases by a third party against an insurer.

We reject this contention. In *Fode v. Farmers Ins. Exch.*, 221 Mont. 282, 719 P.2d 414, 416 (1986), the court recognized that "duties [running from an insurer to a third party tort victim] have been recognized by the Legislature in enacting § 33–18–201, MCA." The Montana legislature endorsed this conclusion when it enacted Mont.Code Ann. § 33–18–242, providing that a third party has a cause of action against an insurer under § 33–18–201(13). Although no Montana authority has held explicitly that subdivision (13) provides a common law right of action in third parties, we view § 33–18–242 as strong support for that conclusion.

■ Prior to the enactment of § 33–18–242, Montana authority indicated that third party claims were permitted under § 33–18–201(2). *See State v. Second Judicial District Court*, 240 Mont. 5, 783 P.2d 911, 912, 915–16 (1989) (contemplating maintenance of third party suit under § 33–18–201(2)). The Montana legislature implicitly overrode this conclusion when it enacted § 33–18–242. That statute omits subdivision (2) from its enumeration of the subdivisions of § 33–18–201 under which a third party may bring suit. Section 33–18–

242, however, only applies to causes of action arising after July 1, 1987. 1987 Mont.Laws Ch. 278, §§ 6–7. Based on her allegations, Holmgren's bad faith claim attached when State Farm ceased advance payments and refused to move to a prompt settlement. The last advance was made in April 1987. Thus, her § 33–18–201(2) claim arose before § 33–18–242 became effective.[1]

■ State Farm also contends that the district court erred in refusing to give instructions to the effect that (a) State Farm only had a duty to attempt to effectuate settlement, (b) the duty to settle is reciprocal, and (c) satisfaction of the statutory duty should be considered in light of facts known to the insurer at various stages of the adjustment period. The district court did not err in declining to make these charges. Its charge with respect to § 33–18–201, couched as it was in the statutory text, was adequate and not misleading.

We have carefully reviewed the record. None of State Farm's remaining substantive claims on appeal have merit.

■ (3) *The Rule 37(c) Award*—State Farm argues that the district court erred in awarding expenses to Holmgren under Fed.R.Civ.P. 37(c) for State Farm's failure to qualify its denial of certain requests to admit. But State Farm brought these sanctions upon itself by treating discovery as a game instead of a serious matter. "[W]hen good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remain-

---

1. This conclusion, however, raises an additional problem that State Farm does not discuss. If Holmgren only had a cause of action under § 33–18–201(2) for conduct prior to the effective date of § 33–18–242, she must prove that State Farm's conduct was part of "a general business practice." *Compare* Mont.Code Ann. § 33–18–201 (requiring proof that proscribed conduct occurred "with such frequency as to indicate a general business practice") *with* § 33–18–242(2) ("[i]n an action under this section, a plaintiff is not required to prove that the violations were of such frequency as to indicate a general business practice"). *See also Fode*, 719

P.2d at 416. The district court did not instruct the jury that a finding on general business practice was prerequisite to liability under § 33–18–242(2). By an order dated October 4, 1990, however, the district court instructed State Farm to advise whether it would waive the general business practice element. Our review of the record does not indicate what State Farm's response was on the waiver request. Significantly, however, State Farm does not argue error based on the failure to give an instruction on general business practice. We conclude that State Farm waived this element.

der." Fed.R.Civ.P. 36(a). State Farm acted as if this rule simply didn't exist.

Request No. 1 asked State Farm to "[p]lease admit that the collision [with Holmgren] was caused by Sharon Cannon [the insured] driving through a stop sign." Request for Admission No. 1, ER at tab "RFA." State Farm denied this request without qualification. Response to Request for Admission No. 1, ER at tab "Response to RFA." Its justification: "[I]t was uncertain as to what may have been the proximate cause or causes of the accident. The accident may have been the result of Cannon's having been drinking and driving, or her inattentiveness, or her speed. Neither State Farm nor anyone else really knows what 'caused' the accident...." Appellant's Brief at 13. State Farm's epistemological doubts speak highly of its philosophical sophistication, but poorly of its respect for Rule 36(a). Even if State Farm's nitpicking of the question could serve as a basis for qualifying its response, it certainly doesn't justify a flat denial.

Request No. 4 asked State Farm to "[p]lease admit that after her vehicle collided with three more vehicles, Sharon Cannon attempted to escape the scene of those accidents." State Farm denied this request without qualification, because, it claimed, the word "escape" required knowledge of Cannon's subjective intentions, yet no one could know for sure what Cannon intended at the time. Appellant's Brief at 14. State Farm concedes, however, that Cannon may have tried to leave the accident scene. *Id.* After-the-fact excuses about the unknowability of intentions do not justify blanket denials. At the very least, the response should have stated the grounds for dispute.

State Farm also denied Request No. 5, which said: "Please admit that at the time of the accident involving Julie Holmgren, Sharon Cannon was operating her vehicle under the influence of alcohol." In its brief before us State Farm freely admits that Cannon had been drinking quite a bit. Appellant's Brief at 15–16. How, then, does it justify its flat denial? "[B]eing 'under the influence of alcohol' is a physical condition which varies between persons depending upon dozens of physiological and psychological factors, and State Farm was not in a position to admit that Sharon Cannon was 'under the influence of alcohol.'" *Id.* Even if one were to accept appellant's point, Fed.R.Civ.P. 36(a) imposes a duty to "qualify an answer or deny only a part of the matter" by conceding Cannon's drinking, but disputing its significance.

Request No. 6 asked: "Please admit that at the time of the accident involving Julie Holmgren, Sharon Cannon's blood alcohol content was two and one-half times greater than the presumptive level of intoxication under Montana law." State Farm's reply: "No one knows what Cannon's blood alcohol content was at the time of the accident," because "one cannot, with exactness, derive Cannon's blood alcohol content at the time of the accident from" tests taken hours later. Appellant's Brief at 15–16. This might have been a plausible quibble if it had been given as a qualification to an admission. As a post hoc explanation for a blanket denial, it is totally unacceptable.

Request No. 3 was the simplest of all: "Please admit that immediately after leaving the scene of the accident involving Julie Holmgren, Sharon Cannon's vehicle collided with three more vehicles." State Farm now states that it denied that request because "[t]o the best of counsel's recollection, ... there was some question as to just how many cars the Cannon vehicle collided with." CR 107, *cited in* Appellant's Brief at 14. But a denial means "no," not "I'm not sure." If State Farm was genuinely uncertain (after conducting the reasonable inquiry required by Fed.R.Civ.P. 36(a)), it should have said so. The lawyer's justifi-

cation—made only a few months after State Farm responded to Holmgren's requests—provides no factual predicate at all for a flat denial.

The record supports the district court's conclusion that the core of each of the requests for admission had to do with indisputable historical fact. If State Farm had objections to the requests based on issues other than historical fact, good faith required it to qualify its denials to make clear that it conceded matters of historical fact. State Farm's argument that the requests were indivisible is without merit.

■ State Farm argues that the district court abused its discretion in fixing the amount of the Rule 37(c) award. It relies upon three items in the affidavit supporting the motion for an award under 37(c) to sustain its contention that the district court awarded expenses incurred prior to denial of the requests. According to the affidavit, all three of those items accrued on or before October 3, 1989. CR 115 (Items 25–27). By that date, this litigation had not begun. Those expenses did not flow from State Farm's wrongful failure to qualify its denials during the discovery stage of this suit. The district court therefore abused its discretion in incorporating those sums in its award. *See, e.g., Stillman v. Edmund Scientific Co.*, 522 F.2d 798, 801 & n. 8 (4th Cir.1975) (because "sanctions authorized under [Rule 37] must pertain to the discovery process, no assessment may be made for expenses which were incurred independent of that process"); *United States v. National Sur. Corp.*, 25 F.R.D. 249, 251 (E.D.Pa.1960) (Rule 37(c) award does not include expenses incurred prior to filing of answers to requests for admission). We reverse the award to the extent that it incorporates these expenses. We also remand for a determination of whether any of the remaining items included in the award, many of which are not time-specific, were incurred prior to the filing of the denials.

■ The district court found $200 per hour to be a reasonable rate for calculation of attorney expenses. It considered the expertise of Holmgren's counsel and the contingent nature of the fee arrangement between Holmgren and counsel. It also had before it an affidavit from local counsel indicating that the going non-contingent fee rate in Great Falls was $125. We are unable to find, on this record, that the district court abused its discretion in fixing the hourly rate on which the award is based.

■ Although the district court has wide discretion to fix the amount of a Rule 37(c) award, the rule provides that such an award must be "reasonable." In fixing the award, we direct the court to consider the strength and clarity of the police and news reports that were admitted as evidence of the denied facts.

### III

■ We exercise our discretion to impose damages on State Farm as a sanction for raising frivolous issues on appeal. *See* Fed.R.App.P. 38; *Wilcox v. Commissioner of Internal Revenue*, 848 F.2d 1007, 1008–09 (9th Cir.1988). We could award sanctions based entirely on State Farm's failure to comply with Fed.R.Civ.P. 36(a), but we note State Farm also made the following meritless appellate arguments: (a) admission of advance payments; (b) exclusion of the Lees–Haley deposition excerpts; (c) refusal to give relationship instructions; (d) proximate cause instruction; (e) damage allocation; and (f) refusal to give a special verdict form as to liability. We award sanctions in the additional amount of $5,000.

The district court's judgment is AFFIRMED on the merits. The district court's decision to award fees under Rule 37(c) is AFFIRMED. We impose sanctions on State Farm in the amount of $5,000. We REMAND for a determination of which expenses were incurred in this litigation as a result of State Farm's denials and what

sum is reasonable considering all relevant facts.

AFFIRMED but REMANDED for recalculation of the Rule 37(c) award. The plaintiff shall recover costs.