Lawrence O'CONNOR, et al.

v.

BOEING NORTH AMERICAN, INC., et al.

No. CV97–1554–DT (RCx).

United States District Court, C.D. California.

Aug. 8, 2003.

A. Barry Cappello, Leila J. Noel, Alisa Finigan, Troy A. Thielemann, Cappello & McCann, Santa Barbara, CA, Tina B. Nieves, Hector G. Gancedo, Gancedo & Nieves, Pasadena, CA, for Plaintiffs.

William Schofield, Paul Hastings, Janofsky & Walker, San Francisco, CA, for Defendants.

**PROCEEDINGS: ORDER GRANTING PLAINTIFFS' MOTION TO PROHIBIT THE DEPOSITION OF LARRY TROXEL**

CHAPMAN, United States Magistrate Judge.

On August 1, 2003, plaintiffs and defendant Boeing North American, Inc. ("Boeing") submitted concurrent letter briefs, with exhibits, and plaintiffs filed the declaration of A. Barry Cappello, with exhibits. Oral argument was held telephonically before Magistrate Judge Rosalyn M. Chapman on August 8, 2003. A. Barry Cappello, Leila J. Noel, Alisa Finigan and Troy A. Thielemann, attorneys-at-law, appeared on behalf of plaintiffs and William Schofield, attorney-at-law with the firm Paul, Hastings, Janofsky & Walker, appeared on behalf of Boeing.

## BACKGROUND

The pending dispute is the latest in a series of discovery matters arising in this toxic tort class action, which has been pending now for more than six years. The Ninth Circuit Court of Appeals, in *O'Connor v. Boeing North American, Inc.*, 311 F.3d 1139 (9th Cir.2002), set forth the nature and procedural history of these proceedings, as did this Court in an earlier discovery opinion, *O'Connor v. Boeing North American, Inc.*, 185 F.R.D. 272 (C.D.Cal.1999). Thus, there is no need to again recite this case's nature or procedural history.

This discovery dispute focuses on whether Boeing can depose plaintiffs' counsel's investigator, Larry Troxel, who "has conducted numerous interviews of third-party witnesses on Plaintiffs' counsel's behalf." Plaintiffs' Letter Brief at 1.[1] One of the witnesses Mr. Troxel interviewed is Charles Trapani, whom plaintiffs deposed on April 9, 2002. Plaintiffs' Letter Brief, Exh. 2. Mr. Trapani was employed about thirty years ago as a salesman by Erlen and UOP, and, in that capacity, sold Rocketdyne certain products, which were used at their cooling towers. Plaintiffs' Letter Brief, Exh. 2 at 7:22–10:1, 14:2–10.

At Mr. Trapani's deposition, plaintiffs' counsel asked Mr. Trapani questions premised on information he had gotten from Mr. Troxel and questions about the telephone interview Mr. Troxel had with Mr. Trapani on February 11, 2002. Specifically, plaintiffs' counsel asked Mr. Trapani: "[Do y]ou remember telling [Mr. Troxel] the J1 and J2 were chromated chemicals?" Plaintiffs' Letter Brief, Exh. 2 at 11:14–15. Plaintiffs' counsel further asked Mr. Trapani:

> [Did you say] to [Mr. Troxel] that you remembered a product labeled J2 and [you] believe[d] also J1 and they were chromates, . . .—and they were chemicals in briquettes and they were placed in the water cooling towers?

Plaintiffs' Letter Brief, Exh. 2 at 12:10–15.

Boeing argues it should be allowed to depose Mr. Troxel since these questions to Mr. Trapani constitute a waiver by plaintiffs' counsel of any work product protection attached to Mr. Troxel's interview with Mr. Trapani, as well as any documents pertaining to Mr. Troxel's interview of other witnesses relating to "cooling towers." On the other hand, plaintiffs argue Mr. Troxel's recollections and notes are subject to work product protection and, even assuming the deposition examination of Mr. Trapani constitutes a waiver of their work product protection, any waiver is limited to the topic examined, i.e., products labeled J1 and J2 and whether they are chromates.

---

1. On or about July 18, 2003, Boeing served a subpoena on Mr. Troxel, noticing his deposition on August 6, 2003, and requesting documents be produced at the deposition relating to conversations between Mr. Troxel and Mr. Trapani and other witnesses. Plaintiffs' Letter Brief, Exh. 1. Due to the exigencies of time, the Court agreed to hear this dispute on an expedited basis.

## DISCUSSION

The work product doctrine protects from discovery material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or preparation for trial. Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509–12, 67 S.Ct. 385, 392–94, 91 L.Ed. 451 (1947). One of the primary purposes of the work product doctrine is to prevent one party exploiting the other party's efforts to prepare for litigation. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir.1992); *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir.1989). The work product doctrine establishes a qualified immunity, rather than a privilege, and the qualification of the immunity is to be determined upon a showing of necessity or good cause. *Admiral Ins. Co.*, 881 F.2d at 1494; *Doubleday v. Ruh*, 149 F.R.D. 601, 605 n. 3 (E.D.Cal.1993). The party claiming work product immunity has the burden of proving the applicability of the doctrine. *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D.Cal.1995); *Nutmeg Ins. Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504, 510 (W.D.La.1988).

As the Eighth Circuit has noted:

> There are two kinds of work product—ordinary work product and opinion work product. Ordinary work product includes raw factual information. Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories. Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. *See* Fed.R.Civ.P. 26(b)(3). In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud.

*Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir.2000) (some citations omitted); *see also Holmgren*, 976 F.2d at 577 ("A party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product.... [O]pinion work product may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling.").

█ Initially, Boeing argues that "Mr. Troxel's interview notes and testimony are not protected by the work product doctrine" because "[t]here is no 'special protection' for information regarding what various witnesses told Mr. Troxel...." Defendant's Letter Brief at 10. This is not correct, as the Supreme Court held:

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975). For this reason, the Eighth Circuit in Baker held that documents pertaining to interviews by defendant's counsel with defendant's employees are protected opinion work product, stating:

> Notes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity. *See also Upjohn Co. v. United States*, 449 U.S. 383, 399–400, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored be-

cause it tends to reveal the attorney's mental processes"). Attorney notes reveal an attorney's legal conclusions because, when taking notes, an attorney often focuses on those facts that she deems legally significant. In this way, attorney notes are akin to an attorney's determination as to which documents are important to a case—the latter being something we have also held to be protected work product.

*Baker*, 209 F.3d at 1054 (some citations omitted). Similarly, in *Appeal of Hughes*, 633 F.2d 282 (3d Cir.1980), the Third Circuit held the Government's request for a private investigator's oral testimony regarding witness interviews went "to the core of the work product of an agent of the attorney, the very substance of the interviewee's statements. Though [the private investigator] would presumably have been speaking from memory, examination into his recollection of the interview might have indirectly revealed his, and [counsel's] mental processes." *Id.* at 290. Thus, it is clear Boeing seeks information protected by the work product doctrine.

█ Nonetheless, Boeing contends the information it seeks, even if work product, is ordinary work product and should be discoverable because "the balance of equities favors disclosure of the information" in that "[o]nly Mr. Troxel can testify as to what he heard Mr. Trapani and other similar witnesses say during his interviews of them."[2] Defendant's Letter Brief at 10. There is no merit to this argument since,

> [e]ven if [the court] were to assume the documents were ordinary work product, [Boeing] ha[s] not shown a substantial need for the [information] and that the substantial equivalent of the information could not be procured by other means. Discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party. A party also does not demonstrate substantial need when it merely seeks corroborative evidence.

*Baker*, 209 F.3d at 1054 (citations omitted); *see also Hughes*, 633 F.2d at 290 (rejecting

---

**2.** This is, of course, not true. Mr. Trapani can disclose what he told Mr. Troxel. In fact, this is

the nature of the questions plaintiffs' counsel asked Mr. Trapani, as set forth above.

Government's attempt to subpoena attorney's private investigator to testify regarding witness interviews he conducted when Government "made no showing that the same information could not be obtained easily by resort to alternative sources").

Finally, relying on Nobles and *United States v. Salsedo*, 607 F.2d 318 (9th Cir.1979), Boeing argues that, even assuming Mr. Troxel's interview notes and recollections are protected work product, plaintiffs have waived that protection by asking Mr. Trapani about his interview with Mr. Troxel. Defendant's Letter Brief at 10–11. The Court also finds no merit to this claim.

In Nobles, the Supreme Court held a defendant waives work product protection when he attempts to make "testimonial use of work product materials," such as when he "sought to adduce the testimony of [his attorney's] investigator and contrast [the investigator's] recollection of ... contested statements with that of the prosecution's witnesses." *Nobles*, 422 U.S. at 239–40 & n. 14, 95 S.Ct. at 2170–71 & n. 14. Similarly, in Salsedo, the Ninth Circuit held "defense counsel waived any work product privilege in relation [to an allegedly privileged] transcript through the use of the transcript in his cross-examination." *Salsedo*, 607 F.2d at 320–21.

Here, unlike Nobles and Salsedo, plaintiffs' counsel did not make "testimonial use" of any information provided by Mr. Troxel. Rather, at best, plaintiffs' counsel utilized information gotten by Mr. Troxel to formulate questions to Mr. Trapani. Yet, "counsel's questions are not evidence," *Tolbert v. Queens College*, 242 F.3d 58, 75 (2d Cir.2001), and absent any testimonial use, plaintiffs have not waived their work product protection. *See Nobles*, 422 U.S. at 239–40 n. 14, 95 S.Ct. at 2171 n. 14 ("Counsel necessarily makes use throughout trial of the notes, documents, and other internal materials prepared to present adequately his client's case, and often relies on them in examining witnesses. When so used, there normally is no waiver."); *Rockwell Int'l Corp. v. Department of Justice*, 235 F.3d 598, 605 (D.C.Cir. 2001) (Even "quoting [selected] portions of some [work product documents] is [not] inconsistent with a desire to keep the rest

secret, particularly in view of the steps the [defendant] took to maintain their confidentiality. . . .").

Federal Rule of Civil Procedure 26(c) governs the granting of a protective order. A protective order should be granted when the moving party establishes "good cause" for the order and "justice requires [a protective order] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R.Civ.P. 26(c). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir.2002); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir.), *cert. denied*, 506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992). Here, a protective order should be granted to plaintiffs to prohibit Boeing from taking Larry Troxel's deposition.

### ORDER

Boeing North American, Inc. is prohibited from taking the deposition of Larry Troxel and subpoenaing his records of third-person interviews and other things.