# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MARIE DESRIVIERES &              :
EDNER JOSEPH                     :
                                 :
            Plaintiffs,          :        K15C-07-025 JJC
                                 :        In and For Kent County
       v.                        :
                                 :
GARNIER RICHARD &                :
NATIONWIDE INSURANCE             :
COMPANY                          :
                                 :
            Defendants.          :

Submitted: November 13, 2015
Decided: January 14, 2016

## OPINION AND ORDER

*Upon Defendant's Motion to Dismiss*
*GRANTED in part and DENIED in part*

Andres Gutierrez de Cos, Esquire, of Andres de Cos, LLC, Wilmington, Delaware, Attorney for Plaintiffs.

Sean A. Dolan, Esquire, of Law Office of Cynthia G. Beam, Newark, Delaware, Attorney for Defendant, Garnier Richard.

Donald M. Ransom, Esquire, of Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware, Attorney for Defendant, Nationwide Insurance Company.

Clark, J.

# I. INTRODUCTION

Defendant Nationwide ("Nationwide") moves to dismiss Plaintiffs Marie Desrivieres's and Edner Joseph's ("Plaintiffs") claims against Nationwide pursuant to Superior Court Civil Rule 12(b)(6). The Complaint includes allegations of Nationwide's bad faith, breach of the implied covenant of fair dealing, and fraud. For the following reasons, Nationwide's motion to dismiss Plaintiffs' Complaint is GRANTED in part and DENIED in part. Furthermore, Plaintiffs are granted leave to amend the Complaint within 30 days to alleged the proper Nationwide party, if necessary.

## II. FACTUAL BACKGROUND AS ALLEGED IN COMPLAINT

As alleged in Plaintiff's Complaint, Plaintiffs suffered injuries in a single car accident on March 3, 2014 when Defendant Garnier Richard, the driver of a vehicle they were occupying, negligently caused an accident. According to the Complaint, Nationwide was both the liability carrier for the tortfeasor, and the personal injury protection ("PIP") carrier for the Plaintiffs. Accordingly, Nationwide's relationship to the Plaintiffs has both a first-party and a third-party component.

The Complaint further alleges that Plaintiffs contacted Nationwide on March 5, 2014 inquiring about payment of medical care. On March 6, a Nationwide adjuster presented the Plaintiffs with releases for their bodily injury claims for $1,000 each.

2

The Plaintiffs signed the releases and the adjuster gave them $1,000 "gift cards." The Nationwide adjuster also presented medical record authorizations to Plaintiffs which they signed.

The Complaint specifically alleges that the Nationwide on-site adjustor knew that the Plaintiffs did not speak or read English. It also alleges that the Nationwide adjuster did not seek the services of an interpreter and took no action to inform Plaintiffs that they were releasing their bodily injury claims for $1,000. In fact, the allegations in the Complaint allege that the adjuster affirmatively misrepresented "the nature of and consequences of signing the [releases]." The Complaint further alleges that the adjuster hid the releases under a medical authorization. Finally, the Complaint alleges that Nationwide's employee's actions were taken pursuant to a reward system set up which Nationwide knew would cause its adjusters to commit fraud. It also alleges various unfair business practices by Nationwide in connection with adjuster practices designed to take advantage of Plaintiffs.

### III. STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6), all allegations in the complaint must be accepted as true.[1] The test for sufficiency is a broad one: the complaint will survive a motion to dismiss so long as

---

[1] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

3

"a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[2] Stated differently, a complaint will not be dismissed unless it clearly lacks factual or legal merit.[3]

Moreover, Delaware Civil Procedure Rule 9(b) requires that averments of fraud, negligence or mistake be pled with particularity."[4] This means the "mere use of the word 'fraud' or its equivalent is not a sufficiently particular statement of the circumstances relied upon".[5]

## IV. DISCUSSION

Plaintiffs have alleged facts that, if true, satisfy all elements of a fraud claim. However, Plaintiffs have failed to allege facts that generate claims for bad faith or a breach of the implied covenant of good faith and fair dealing. Therefore, pursuant to Rule 12(b)(6), Plaintiff's allegations regarding bad faith and breach of the implied covenant of good faith and fair dealing claims are dismissed.

A.   **Plaintiffs' Complaint states a claim upon which relief may be granted regarding fraud**.

Plaintiffs allege Nationwide committed fraud in the inducement, which voids

---

[2] *Id.* (citing *Klein v. Sunbeam Corp.*, 94 A.2d 385 (Del. 1952)).

[3]*Diamond State Tel. Co. v. Univ. of Del.*, 269 A.2d 52, 58 (Del. 1970).

[4] *Del. Super. Ct. Civ. R.* 9.

[5] *Halpern v. Barran*, 313 A.2d 139, 143 (Del. Ch. 1973).

4

the release of Plaintiffs' bodily injury claims. The elements of a fraud claim include: (1) a false representation of material fact; (2) the knowledge or belief that the representation was false, or made with reckless indifference for the truth; (3) the intent to induce another party to act or refrain from acting; (4) the action or inaction taken was in justifiable reliance on the representation; and (5) damage to the other party as a result of the representation.[6]

In the context of an insurance claim, fraud by an insurer will invalidate a signed release.[7] In Delaware "'courts will enforce a general release that is 'clear and unambiguous,' unless the Plaintiff can show there was "fraud, duress, coercion, or mutual mistake concerning the existence of [her] injuries.'"[8] A release is voidable if the Plaintiff can show that there was fraud.[9] However, unless a Plaintiff was precluded from reading the release, a "release will not lightly be set aside where the language is clear and unambiguous" despite any misrepresentation by an adjuster.[10]

Here, Plaintiffs allege that Nationwide: (1) made a false representation of fact by misrepresenting to non-English speaking claimants the purpose of the presented

---

[6] *In re Lyle*, 2013 WL 4543284, at *8 (Del. 2013).

[7]*Bernal v. Feliciano*, 2013 WL 1871756, at *3 (Del.Super. May 1, 2013).

[8] *Id.*

[9] *Id.*

[10] *Id.* *3-4.

documents; (2) had knowledge or belief that the representation was false; (3)intended to induce Plaintiffs to abandon their claims; (4) through its adjuster, told the Plaintiffs that the consideration for the releases, the $1,000 gift cards, were for medical care and that they were simply signing a receipt for the gift cards; and (5) caused damages to Plaintiffs in the amount of their bodily injury claims which remain uncompensated. Accordingly, Plaintiffs have stated a *prima facie* case as to fraud with sufficient particularity.

Nationwide argues in its Motion to Dismiss, that based upon two prior Superior Court decisions, *Bernal v. Feliciano* and *Patrick v. Ellis*, an alleged misrepresentation by an insurance adjuster cannot overcome clearly worded, unambiguous language in a written release. Namely, Nationwide argues that because the language of the releases clearly apprise Plaintiffs of the extent of the releases, and they should have read them before signing them, allegations of misrepresentation by the adjuster cannot support a fraud claim. Both *Bernal* and *Patrick* are distinguishable at this stage of the proceedings, however.

In *Bernal*, Plaintiff was fluent in Spanish but did not read, write or speak English.[11] The Plaintiff had not been compensated for her lost wages resulting from

---

[11] *Id.* at *1.

an accident.[12] Plaintiff's daughter, Yasmin Martinez ("Martinez") was fluent in both Spanish and English and the Plaintiff in that case chose to rely upon her for translation between the adjuster and the Plaintiff.[13] Martinez only spoke to the adjuster on behalf of her mother regarding compensation for Plaintiff's lost wages.[14] Nevertheless, the adjuster sent a general release to Martinez's place of employment citing consideration of $410. Martinez mistakenly believed it was solely for lost wages.[15] Relying on Martinez's understanding of the document, the Plaintiff signed the general release form and returned it to the adjuster.[16]

The Plaintiff in *Bernal* thereafter brought a personal injury action against the Defendant and the Defendant moved to dismiss based on the general release.[17] The Court converted the motion to one for summary judgment because it relied on materials outside of the pleadings.[18] The Court then granted summary judgment. It based its decision on the fact that nothing precluded Plaintiff (through Martinez) from

---

[12] *Id.* at *2.

[13] *Id.* at *1-2.

[14] *Id.* at *2.

[15] *Bernal*, 2013 WL 1871756 at, *4.

[16] *Id.*

[17] *Id.* at *2.

[18] *Id.*

7

reading the release and that release was clear and unambiguous. The fact that the Plaintiff could not speak, write or read English was not addressed in the decision's reasoning, perhaps because of the English-literate intermediary.

*Bernal v. Feliciano* is distinguishable from the case at hand on multiple grounds. First, the Court in *Bernal* ruled on a motion for summary judgment and not a motion to dismiss. Here, Plaintiffs adequately allege fraud with sufficient particularity to survive a Rule 12(b)(6) motion. Discovery will ultimately reveal whether sufficient evidence exists to generate a triable issue of fact. Second, the allegations in this case do not involve an English literate interpreter such as Martinez in the *Bernal* case. The facts applicable to this motion are as alleged and Plaintiffs allege they had no ability to read or understand the releases at issue. Finally, the cases cited by the Court in *Bernal* involve various claims where the various Plaintiffs chose not to read the releases, despite adequate opportunity. Here, as alleged, the nature of the documents were hidden from the non-English-literate Plaintiffs.

Likewise, *Patrick v. Ellis* is distinguishable. In *Patrick*, Plaintiff was in an accident involving a dump truck, another vehicle and Plaintiff's vehicle.[19] Five days after the accident, an adjuster for one of several alleged tortfeasors met with Plaintiff

---

[19] *Patrick v. Ellis*, 2013 WL 5800908, at *1 (Del. Super. Oct. 18, 2013).

8

at Plaintiff's home.[20]  The meeting lasted over an hour, in which Plaintiff signed a general release, releasing all claims against all parties, in exchange for a check worth $750.[21]  The Plaintiff later filed a personal injury action and the alleged tortfeasors relied on the affirmative defenses of accord and satisfaction and release.[22]  Plaintiff was deposed and testified that he was taking approximately eleven medications when he signed the release (although only one medicine was new).[23] He further testified that during the day of the meeting with the adjuster, he felt out of sorts and thought that the new steroid prescription he was given after the accident "might" have affected his clarity of thought, yet he was unsure.[24]  He stated that he only had a seventh-grade education, and though he could read, he chose to not read the general release before signing it.[25]  He testified that he was not feeling well and just wanted the adjuster to leave.[26]

Notwithstanding the signed bodily injury release, the Plaintiff in *Patrick* sued

---

[20] *Id.*

[21] *Id.*

[22] *Id. at *2.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

for bodily injury as a result of the collision.[27] After discovery, the Defendant moved for summary judgment and the Court granted Defendant's motion.[28] As in *Bernal*, the Court in *Patrick* ruled that a release is not invalidated because "an individual chose not to read it before signing."[29] Furthermore, in *Patrick*, discovery revealed that Plaintiff was given ample time to read the document, ask any questions, and if he had read the document, he would have been aware that the general release was for all claims against all parties.[30] The Court in *Patrick* held that it was the Plaintiff's obligation to read and understand the release prior to signing.[31] The Plaintiff chose to not read it, so the Plaintiff could not claim that he signed under duress, coercion, or undue influence.[32]

*Patrick v. Ellis* was also a summary judgment decision, not a decision regarding a motion to dismiss.[33] There was deposition testimony available to shed light on the factual aspects of the fraud claim. Here, the parties have conducted no

---

[27] *Id.*

[28] *Id.* at 3, 9.

[29] *Patrick,* 2013 WL 5800908, at *5.

[30] *Id.* at *7.

[31] *Id.*

[32] *Id.*

[33] *Id.* at *1.

10

written discovery or depositions. Furthermore, as alleged, the Plaintiffs speak no English, the adjuster knew that, and allegedly hid a release under a medical authorization form. Unlike a situation involving a literate individual's choice to not read a release, the facts alleged here state a potential fraud claim. For these reasons, Plaintiffs' Complaint states a claim upon which relief may be granted.

**B.      Plaintiffs' Complaint fails to state a bad faith claim against Nationwide.**

Delaware recognizes claims for bad faith against an insurer when an insured can show that an insurer's denial of benefits was "clearly without any reasonable justification."[34] However, an injured third-party may not directly bring an action of bad faith against a tortfeasor's insurer. "Under Delaware law, an injured party may not bring a direct action against a liability insurer based upon the negligence of the insured."[35] In this regard, an injured third-party may not bring a direct action against a liability insurer of an insured before a determination of the insured's liability.[36] Furthermore, an insurer does not owe any duty to a third-party to negotiate a settlement in good faith.[37] This duty of good faith runs only to the insured and not to

---

[34] *Tackett v. State Farm Fire & Cas. Ins. Co.,* 653 A.2d 254, 264 (Del. 1995).

[35] *Shipley v. Shaw*, 2007 WL 521813, at *2 (D. Del. Feb. 16, 2007).

[36] *Id.*

[37] *Swain v. State Farm Mut. Auto. Ins. Co.*, 2003 WL 22853415, at *1 (Del. Super. May 29, 2003).

11

an injured third-party.[38]

A first-party insured may establish a claim of bad faith in a first-party insured-insurer contractual relationship if they "show that the insurer lacked reasonable justification in delaying or refusing payment of a claim."[39] In this context, the mental impressions, strategy, and "opinions of [the insurer's] agents concerning the handling of the claim are directly at issue."[40]

In the case at hand, Plaintiffs' suit seeks third-party benefits. As passengers in the same vehicle, however, Plaintiffs are also first-party claimants for personal injury protection benefits. This first-party element to the case, would under certain circumstances, permit Plaintiffs to bring a direct action against Nationwide for bad faith.

However, Plaintiffs' Complaint does not allege Nationwide's bad faith regarding Plaintiffs' **PIP claims**. Namely, Plaintiffs have not alleged a bad faith denial or delay in payment of PIP benefits. Plaintiffs Complaint focuses only on the alleged bad faith activities of the adjuster in her role as a representative of the tortfeasor. Accordingly, Plaintiffs' claim of bad faith must be dismissed without

---

[38] *Hullinger v. Thompson*, 1992 WL 9307, at *1 (Del.Super. Jan. 9, 1992).

[39] *Tackett,* 653 A.2d at 262.

[40] *Id.* at 263 (Quoting *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (1992)).

prejudice for failure to state a claim upon which relief may be granted.

**C.**  **Plaintiffs' Complaint also fails to state a claim regarding the breach of the implied covenant of good faith and fair dealing**.

In the context of insurance contracts, a breach of the implied covenant of good faith and fair dealing occurs "[w]here an insurer fails to investigate or process a claim or delays payment in bad faith."[41]  The relationship between an insured and the insurer arises from a mutual exchange of consideration, such as paying premiums for insurance in exchange for coverage, and is controlled by the terms and standards set in the agreement.[42]  A claim that is in breach of the terms of that agreement should be treated like a breach of contract because there is no sound theoretical difference between a first-party insurance contract versus other contracts.[43]  "The implied covenant requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."[44] Parties are liable for breaching the implied covenant when their conduct frustrates the overarching purpose of the

---

[41] *Id.* at 264.

[42] *Id.*

[43] *Id.*

[44] *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005)

13

contract.[45]

Here, Plaintiffs have not alleged the elements of a breach of the implied covenant of good faith and fair dealing to notice pleading standards. As Nationwide argued and Plaintiffs correctly emphasize in their response, a claim for a breach of the implied covenant of good faith and fair dealing ensures that the injured party receives "the fruits of the contract." [46] Plaintiffs have not alleged what terms of the PIP contract were violated or breached. The Complaint has also not alleged that Nationwide has delayed a payment or failed to process a PIP claim, or that Nationwide denied Plaintiffs any benefits through Nationwide's role as the Plaintiffs' PIP insurer. Because cognizable damages resulting from this claim have not been alleged in the Complaint, it must also be dismissed without prejudice.

## V. CONCLUSION

**WHEREFORE**, for the reasons cited, Nationwide's Motion to Dismiss is granted in part and denied in part. Specifically, Nationwide's Motion to Dismiss Plaintiffs' fraud claim is DENIED. Plaintiff's Motion to Dismiss the bad faith and unfair dealing claims against Nationwide is GRANTED, without prejudice. Plaintiffs are further granted leave to amend the Complaint to allege, if necessary, the correct

---

[45] *Id.*

[46] *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985).

14

Nationwide entity provided they do so within thirty days of the date of this Order.


**IT IS SO ORDERED.**


                    /s/Jeffrey J Clark
                        Judge

15